[Cite as *State v. Retana*, 2012-Ohio-5608.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2011-12-225 |
| | : | O P I N I O N |
| - vs - | | 12/3/2012 |
| | : | |
| HECTOR ALVARENGA RETANA, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2010-06-0969


Michael T. Gmoser, Butler County Prosecuting Attorney, Michael A. Oster, Jr., Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Jeffrey W. Bowling, 315 South Monument Avenue, Hamilton, Ohio 45011, for defendant-appellant


**RINGLAND, J.**

{¶ 1} Defendant-appellant, Hector Alvarenga Retana, appeals his conviction in the Butler County Common Pleas Court for three counts of aggravated murder, one count of attempted aggravated murder, two counts of felonious assault, one count of intimidating a witness, one count of participating in criminal gang, and the various specifications attached to those counts. For the reasons that follow, we affirm.

{¶ 2}   Appellant was the local leader of the MS-13 gang.  In the early morning hours of July 13, 2008, appellant and fellow MS-13 gang member, Edel Hernandez "Loly" Martinez, traveled to the Casa Tequila, a restaurant and bar in Fairfield, Butler County, Ohio.  Traveling with them in the back seat was Corinna Barrios.  Corinna had known appellant for about one and one-half years, but she did not know where appellant was taking her.  During the trip to the Casa Tequila, Corinna heard appellant tell Loly, "this time he couldn't fail, that he had to complete his mission," and Loly respond that "this time he was not going to fail."

{¶ 3}   When they arrived at the Casa Tequila, Corinna asked appellant why they were there, and appellant told her, "Shut up, bitch."  Appellant drove around the parking lot three times.  On the third time around, Corinna saw appellant pull out from under the seat what she believed to be a handgun and give it to Loly.  Loly took the handgun but then said to appellant, "there's nobody here[,] [l]et's go[,]" and returned the weapon to him.  Appellant took back the handgun and ordered Loly to move back and roll down the window.  When Loly did so, appellant fired shots out the vehicle's front passenger window at another vehicle in the parking lot and sped off.  When the shooting started, Corinna began crying, and she kept crying even after the shooting stopped.  This caused appellant to put the handgun to her head and order her to shut up.  He then drove Corinna back to her house.  Once there, he told her not to tell anyone what she had seen, and if she did, he would hurt her husband and children.

{¶ 4}   The police who responded to the scene discovered that appellant had shot two men in the vehicle in the parking lot of the Casa Tequila:  Evelin Osveli Morales, the driver, and Marlon Enamorado-Gomez, the front-seat passenger.  Both men died of their gunshot wounds.  Marlon's younger brother, Jimmy Enamorado-Gomez, who was crouched down in the vehicle's backseat at the time of the shooting, was not shot.  However, he was unable to see the shooter or the vehicle from which the shots were fired.

{¶ 5} Two weeks after the shootings at the Casa Tequila, appellant, his cousin, Jonathan Retana, and Jonathan's girlfriend traveled to the Corinthian, a nightclub in Cincinnati, Hamilton County, Ohio. While they were at the Corinthian, appellant gave Jonathan a handgun, and Jonathan, acting at appellant's direction and on his orders, shot and killed Angel Dera or "Flaco[,]" who was a member of the "18th Street" gang, which is a rival gang to MS-13. Jonathan also shot two others while fleeing the scene with his girlfriend and appellant in appellant's vehicle. Jonathan would later testify that he was a member of the MS-13 gang and that he received the order as "a mission" from MS-13.

{¶ 6} In 2011, appellant was indicted on: three counts of aggravated murder in violation of R.C. 2903.01 (Counts One, Two and Five); one count of attempted aggravated murder in violation of R.C. 2923.02(A) and 2903.01(A) (Count Three); one count of intimidation of a witness in a criminal case in violation of R.C. 2921.04(B) (Count Four); two counts of felonious assault in violation of R.C. 2903.11(A)(2) (Counts Six and Seven); and one count of participating in a criminal gang in violation of R.C. 2923.42 (Count Eight). Counts One, Two, Three and Four related to the shootings at Casa Tequila, while Counts Five, Six and Seven related to the shootings at the Corinthian. The shootings at Casa Tequila and the Corinthian formed the predicate for the participating-in-a-criminal-gang charge in Count Eight. Multiple specifications were attached to each of the first seven counts, including firearm and gang-related specifications.

{¶ 7} At appellant's trial, the state presented testimony from a number of witnesses, including Corinna and Jonathan Retana, who testified to the events that occurred at Casa Tequila and the Corinthian, respectively, as set forth above. At the close of evidence, the jury found appellant guilty on all counts and all but one of the specifications, and the trial court sentenced him to serve three consecutive life sentences, without the possibility of parole, plus an additional 57 years in prison for his convictions on the specifications.

{¶ 8}   Appellant now appeals, assigning the following as error:

{¶ 9}   Assignment of Error No. 1:

{¶ 10}   THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT WHEN IT FAILED TO SEVER COUNTS ONE, TWO, THREE, FOUR AND EIGHT FROM COUNTS FIVE, SIX AND SEVEN[.]

{¶ 11}   Assignment of Error No. 2:

{¶ 12}   THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT WHEN IT PERMITTED OTHER ACTS EVIDENCE FROM AN INVOLUNTARY MANSLAUGHTER CONVICTION IN NORTH CAROLINA TO BE PRESENTED TO THE JURY[.]

{¶ 13}   Assignment of Error No. 3:

{¶ 14}   THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT WHEN IT PERMITTED FBI AGENT, TRACY DISTLER, TO TESTIFY AS AN EXPERT IN THE FIELD OF GANG CULTURE WITHOUT SUPPLYING DEFENDANT WITH A SUMMARY OF HER EXPERIENCE AND OPINIONS[.]

{¶ 15}   Assignment of Error No. 4:

{¶ 16}   MR. RETANA'S MARCH 9, 2009, STATEMENT SHOULD NOT HAVE BEEN PERMITTED AT TRIAL PURSUANT TO THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, §10 OF THE OHIO CONSTITUTION[.]

{¶ 17}   Assignment of Error No. 5:

{¶ 18}   MR. RETANA'S TRIAL COUNSEL WAS INEFFECTIVE SINCE HE FAILED TO FILE A MOTION TO SUPPRESS MR. RETANA'S MARCH 9, 2009, STATEMENT[.]

{¶ 19}   In his first assignment of error, appellant agues the trial court erred in permitting the state to join in the same indictment, under Crim.R. 8(A), Counts Five, Six and Seven,

- 4 -

which involved the shootings at the Corinthian, with Counts One, Two, Three and Four, which involved the shootings at Casa Tequila. Likewise, he argues the trial court erred in refusing his request to sever, under Crim.R. 14, Counts Five, Six and Seven from Counts One, Two, Three and Four. We disagree with these arguments.

{¶ 20} Crim.R. 8(A) provides:

> Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.

{¶ 21} The law favors joining multiple offenses in a single trial under Crim.R. 8(A) "to conserve judicial resources, reduce the chance of incongruous results in successive trials and to diminish inconvenience of witnesses." *State v. Johnson*, 88 Ohio St.3d 95, 109 (2000).

{¶ 22} Crim.R. 14 states in relevant part:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, information or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires.

{¶ 23} Crim.R. 14 allows a defendant to move for severance of offenses that have been joined in an indictment if he can establish that his rights have been prejudiced by joinder of the offenses. *State v. Mills*, 62 Ohio St. 3d 357, 362 (1992). The state may counter a defendant's claim of prejudice by meeting the requirements of either the "other acts" test or the "joinder test." *State v. Franklin*, 62 Ohio St. 3d 118, 122 (1991).

{¶ 24} To meet the requirements of the "other acts" test, the state must show that, if the offenses had been severed, it could have introduced evidence of one offense in the trial

of the other offense under the "other acts" provision in Evid.R. 404(B). *Id.* To meet the requirements of the "joinder" test, the state must show that evidence of each of the crimes joined at trial is "simple and direct." Evidence is "simple and direct" if it leaves a jury "capable of segregating the proof required for each offense" or "makes it unlikely that the jury would confuse the two offenses." *Mills.* If the state can meet the joinder test, it need not meet the "other acts" test, which is considered to be the stricter of the two. *Franklin.*

{¶ 25} The decision whether to sever counts in an indictment rests within the trial court's sound discretion, and the trial court's decision will not be overturned unless it amounts to an abuse of discretion, *i.e.*, the decision is arbitrary, unconscionable or unreasonable. *State v. Fuller*, 12th Dist. Nos. CA2000-11-217, CA2001-03-048, CA2001-03-061, 2002-Ohio-4110, ¶ 46.

{¶ 26} Here, the evidence showed that the offenses appellant committed at Casa Tequila were "of the same or similar character" as the offenses he committed two weeks later at the Corinthian. All counts in the indictment relate to appellant's role in two gang-related shootings outside Hispanic bars or nightclubs that took place within two weeks of each other. The facts and circumstances of these two incidents clearly show that the state was permitted to join those offenses in the same indictment under Crim.R. 8(A).

{¶ 27} Furthermore, the evidence of the offenses committed at Casa Tequila and the Corinthian was "simple and direct" in that it left the jury capable of segregating the proof required to prove the offenses committed at Casa Tequila from the proof required to prove the offenses committed at the Corinthian, and the evidence presented by the state made it unlikely that the jury would confuse the two incidents or the multiple offenses committed during each of them. The crimes committed during these two incidents were distinct, there was very little chance the jury would be confused by trying these two sets of offenses together, and it would have been unduly inefficient to try these two sets of offenses

separately. Therefore, the trial court did not abuse its discretion in refusing to sever, under Crim.R. 14, the counts in the indictment involving the crimes committed at Casa Tequila from the counts in the indictment involving the crimes committed at the Corinthian.

{¶ 28} Appellant also argues Counts Five, Six and Seven should have been severed from the remaining counts in the indictment because the events that formed the basis of Counts Five, Six and Seven occurred in Hamilton County, Ohio rather than Butler County, Ohio, and therefore, under the due process clauses of the United States and Ohio constitutions and Article I, Section 10 of the Ohio Constitution, he should have been tried on Counts Five, Six and Seven in Hamilton County rather than Butler County. This argument lacks merit.

{¶ 29} Appellant is essentially arguing that Butler County was the improper venue for his trial on Counts Five, Six and Seven because the crimes that formed the basis of those counts occurred in Hamilton County. Crim.R. 18(A) provides that "[t]he venue of a criminal case shall be as provided by law." "Thus, reference to the Ohio Constitution and the applicable venue sections of the Revised Code is necessary." *State v. Draggo*, 65 Ohio St.2d 88, 89-90 (1981).

{¶ 30} Article I, Section 10 of the Ohio Constitution states that "[i]n any trial, in any court, the party accused shall be allowed * * * a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed."

{¶ 31} R.C. 2901.12 states in relevant part:

> (A) The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element thereof was committed.
>
> * * *
>
> (H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, he may be tried for all such offenses in any jurisdiction in which one such offense or

any element thereof occurred. Without limitation on the evidence which may be used to establish such course of conduct, any of the following is prima-facie evidence of a course of criminal conduct:

(1) The offenses involved the same victim, or victims of the same type or from the same group.
(2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.
(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.
(4) The offenses were committed in furtherance of the same conspiracy.
(5) The offenses involved the same or a similar modus operandi.

{¶ 32} Here, several of the circumstances listed in R.C. 2901.12(H)(1)-(5) apply to establish that the offenses appellant committed at the Corinthian were part of a "course of conduct" that stretched from the shootings at Casa Tequila in Butler County on July 13, 2008, to the shootings at the Corinthian in Hamilton County two weeks later. Both set of offenses involved victims of the same type or from the same group, *i.e.*, a rival gang of MS-13; appellant committed both sets of offenses as the local leader and "shot caller" of the MS-13 gang; and both sets of offenses involved the same or similar modus operandi. See R.C. 2901.12(H)(1), (2) and (5). Thus, the facts and circumstances of this case were sufficient to establish that Butler County was a proper venue in which to try appellant for the crimes he committed at the Corinthian in Hamilton County.

{¶ 33} In light of the foregoing, appellant's first assignment of error is overruled.

{¶ 34} In his second assignment of error, appellant argues the trial court erred in admitting evidence of his February 2011 conviction in North Carolina for involuntary manslaughter as "other acts" evidence under Evid8.R. 404(B). We disagree with this argument.

{¶ 35} The trial court permitted the state to present, over appellant's objection,

- 8 -

evidence of appellant's 2011 conviction in North Carolina for involuntary manslaughter. The state's testimony showed that appellant's crime in North Carolina was similar to the ones appellant committed at the Casa Tequila and the Corinthian in Ohio in that, like appellant's victims in the current case, the victim in North Carolina was a member or perceived member of the 18th Street gang, which is a rival gang to MS-13; the victim was wearing red clothing and shoes, which is the color the 18th Street gang is known to wear; the victim was Honduran while the MS-13 gang is comprised of Salvadorans; the victim had altercations with either appellant or his family members prior to the shooting; a handgun was used; and the victim died of his wounds.

{¶ 36} The trial court admitted the testimony about appellant's prior conviction for involuntary manslaughter as "other acts" evidence under Evid.R. 404(B). After this testimony was presented to the jurors, the trial court issued a limiting instruction to the jury, informing them that the evidence had been received for a "limited purpose." The trial court instructed the jurors that if they found that appellant had, in fact, been convicted of involuntary manslaughter, they were only permitted to consider the evidence for the purpose of whether it proved appellant's motive, opportunity, intent, purpose, preparation or plan, or the identity of the person who committed the offenses at issue, or the absence of mistake or accident. The trial court further instructed the jurors that the evidence was not to be considered to prove appellant's character in order to show that he acted in conformity therewith.

{¶ 37} Appellant argues that because the offense of involuntary manslaughter in North Carolina involved a "negligence theory" of murder, and thus had a different mens rea than the aggravated murder charges on which he was indicted in this case, evidence of his prior conviction for involuntary manslaughter should not have been admitted as "other acts" evidence in this case. We find this argument unpersuasive.

{¶ 38} Evid.R. 404(B) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

{¶ 39} "Other acts" evidence is admissible under Evid.R. 404(B) "if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) that evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *State v. Lowe*, 69 Ohio St.3d 527, 530 (1994). "Substantial proof" is not proof "beyond a reasonable doubt." *State v. Bromagen*, 12th Dist. No. CA2005-09-087, 2006-Ohio-4429, ¶ 14.

{¶ 40} As noted in *State v. Morris*, 132 Ohio St. 3d 337, 2012-Ohio-2407, ¶ 13:

Evid.R. 404 codifies the common law with respect to evidence of other acts of wrongdoing. *State v. Lowe,* 69 Ohio St.3d 527, 530 * * * (1994). The rule contemplates acts that may or may not be similar to the crime at issue. *State v. Broom,* 40 Ohio St.3d 277, 282 * * * (1988). If the other act is offered for some relevant purpose other than to show character and propensity to commit crime, such as one of the purposes in the listing, the other act may be admissible. *Id.*

As noted in *State v. McAdory*, 9th Dist. No. 21454, 2004-Ohio-1234, ¶ 18:

[I]n order to prove identity through a modus operandi, [the other acts] must be related to and share common features with the offense at issue. *Id.* When such evidence establishes an idiosyncratic pattern of criminal conduct, it is not necessary for the offense at issue to be near in time and place to the other acts introduced into evidence; "the probative value of such conduct lies in its peculiar character rather than its proximity to the event at issue." *DePina,* 21 Ohio App.3d at 92 * * *; *see also State v. Lillie* (Apr. 22, 1992), 9th Dist. No. 15359. Furthermore, these other acts need not be the same or even similar to the offense in question, so long as they indicate a modus operandi attributable to the defendant. *Lowe,* 69 Ohio St.3d at 531 * * *, citing *State v.*

- 10 -

*Hutton* (1990), 53 Ohio St.3d 36, 40 * * *.

{¶ 41} In this case, the trial court did not abuse its discretion in allowing the state to introduce evidence of appellant's 2011 conviction in North Carolina for involuntary manslaughter. Given the similarities between the North Carolina case and the current Ohio cases, it is clear that the North Carolina case established "a behavioral fingerprint" of appellant and thus helped establish his motive, plan, scheme and the lack of any accident or mistake on his part, as well as his identity as the perpetrator of the offenses at issue in this case. Moreover, the fact that appellant was convicted of only involuntary manslaughter in North Carolina rather than murder or aggravated murder does not compel us to reach a different conclusion. *See, e.g.*, *Morris*, citing *Broom*, and *McAdory*. *See also State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571 at ¶ 52 (other act or crime for which grand jury returned a "no bill" could be admitted as "other acts" evidence).

{¶ 42} Additionally, the trial court was careful to provide the jury with a cautionary instruction on the proper use of this other act evidence. The trial court's issuance of this cautionary instruction and the probative value of the other acts evidence convinces us that the trial court did not abuse its discretion in admitting evidence of appellant's prior conviction for involuntary manslaughter. See *id.* at ¶ 47-51.

{¶ 43} As a result, appellant's second assignment of error is overruled.

{¶ 44} In his third assignment of error, appellant argues the trial court erred by not excluding the testimony of FBI Special Agent Distler since the state failed to provide him with Agent Distler's written report summarizing her findings, analysis, conclusions and opinion and a summary of her qualifications. We find this argument unpersuasive.

{¶ 45} Crim.R. 16 states in relevant part:

> **(K) Expert Witnesses; Reports.** An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion,

and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

{¶ 46} The 2010 Staff Note for Division (K) states in pertinent part that "[f]ailure to comply with the rule precludes the expert witness from testifying during trial. This prevents either party from avoiding pretrial disclosure of the substance of expert witness's testimony by not requesting a written report from the expert, or not seeking introduction of a report."

{¶ 47} Crim.R. 16(L) states in relevant part:

**(L) Regulation of discovery.** (1) The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

{¶ 48} The 2010 Staff Notes for Division (L) state that "[t]he trial court continues to retain discretion to ensure that the provisions of the rule are followed. This discretion protects the integrity of the criminal justice process while protecting the rights of the defendants, witnesses, victims, and society at large."

{¶ 49} In this case, the state listed Agent Distler as a witness. The state wanted her to testify about the MS-13 gang, its traits and culture. The state did not have Agent Distler author a written report summarizing her testimony, findings, analysis, conclusions or opinion, or a summary of her qualifications. However, about six months before trial, the trial court ordered the state to provide the defense a transcript of Agent Distler's testimony in the companion case of *Edel Hernandez Martinez*, Butler C.P. No. CR2010-06-0992.

{¶ 50} Prior to trial, appellant filed a motion *in limine* requesting the trial court to

exclude Agent Distler's testimony because her report and summary of her qualifications had not been provided to the defense. In his motion, appellant acknowledged the defense had been provided with Agent Distler's prior testimony in the *Edel Hernandez Martinez* case, and even listed Agent Distler's professional positions in the FBI, including that she is a supervisory special agent who has worked in its Cincinnati office for 19 and one-half years, has worked with the National Gang Task Force from 2005 to 2010, and traveled to El Salvador in 2006 to meet with officials in that country to discuss gang investigations and prosecutions. Appellant also acknowledged in his motion that he knew Agent Distler's testimony was going to focus on gang activity, tattoos, the meaning of MS-13, "throwing gang signs," gang "colors," gang "missions" the area code of El Salvador (503) and "how all of these things relate to membership in the MS-13 gang."

{¶ 51} Appellant argues the trial court was obligated under Crim.R. 16 to exclude Agent Distler's testimony on the ground that the state failed to provide him with a copy of the agent's report and summary of her qualifications, irrespective of whether he could show he was actually prejudiced by the state's failure to strictly comply with the rule. We disagree with this argument.

{¶ 52} In *State v. Joseph*, 73 Ohio St.3d 450, 458 (1995), the court stated that "[p]rosecutorial violations of Crim.R. 16 are reversible only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and the accused suffered some prejudicial effect."

{¶ 53} In *State v. Davis*, 12th Dist. No. CA2010-06-143, 2011-Ohio-2207, ¶ 20, this court stated:

> If a party fails to comply with Crim.R. 16's discovery requirements, a trial court "may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party

from introducing into evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(L) (formerly Crim.R. 16[E][3] ). It is within the trial court's sound discretion to decide what sanction to impose for a discovery violation. *Lakewood v. Papadelis* (1987), 32 Ohio St.3d 1, 3. When deciding on a sanction, a trial court must impose the least severe sanction that is consistent with the purpose of the rules of discovery. *Id.* at 5.

{¶ 54} We conclude that the trial court did not abuse its discretion in refusing to exclude Agent Distler's expert testimony because of the state's failure to strictly comply with Crim.R. 16(K). The state complied with the spirit and purpose of Crim.R. 16(K) since appellant was not only provided with a summary of Agent Distler's testimony, but also "exactly what her opinion is." Additionally, the trial court ordered that Agent Distler not be allowed to deviate from her previous testimony or to provide any opinions that were not included in her previous testimony, and at trial, defense counsel acknowledged that the state did not deviate from the trial court's ruling on Agent Distler's testimony. Therefore, appellant actually received more from the state than what Crim.R. 16 required, and thus he was not prejudiced by the state's failure to strictly comply with the rule.

{¶ 55} Consequently, appellant's third assignment of error is overruled.

{¶ 56} In his fourth assignment of error, appellant argues the statements he made to Detective Gehring should not have been admitted at trial because he made them after he told the detective he no longer wanted to speak with him. However, appellant failed to file a motion to suppress his statements to Detective Gehring, and thus waived this issue. See *State v. Phillips*, 74 Ohio St.3d 72, 97 (1995).

{¶ 57} As a result, appellant's fourth assignment of error is overruled.

{¶ 58} In his fifth assignment of error, appellant argues his trial counsel provided him with ineffective assistance of counsel by not moving to suppress the statements he made to Detective Gehring. This argument lacks merit.

**{¶ 59}** To establish ineffective assistance of counsel, a criminal defendant is required to show that his counsel's performance fell below an objective standard of reasonableness *and* that he suffered prejudice as a result in that, but for his counsel's deficient performance, there is a reasonable probability that the outcome of his trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052 (1984). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

**{¶ 60}** Defense counsel's failure to file a motion to suppress does not constitute ineffective assistance, *per se*, *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000), and does not amount to ineffective assistance when counsel's failure to file such a motion was an objectively reasonable one. *State v. Nields*, 93 Ohio St.3d 6, 34 (2001). Judicial scrutiny of counsel's performance must be highly deferential, and reviewing courts must generally refrain from second-guessing defense counsel's strategic and tactical decisions. *Strickland* at 689-690.

**{¶ 61}** Here, the record shows that, while defense counsel initially intended to file a motion to suppress appellant's statements to Detective Gehring, he subsequently made a deliberate decision not to do so, and chose instead to vigorously cross-examine the detective in an attempt to paint him as a law enforcement officer who had coerced both appellant and Jonathan Retana into saying what he wanted them to say by making false promises to them and ignoring that they had an attorney who was representing them at the time. By doing so, defense counsel was attempting to undermine the credibility of both appellant's and Jonathan Retana's statements to Detective Gehring. Had the jurors been persuaded to disbelieve appellant's and Jonathan Retana's statements to Detective Gehring, this would have prevented them from linking appellant to the shootings at the Corinthian, since their statements to the detective were the only link between appellant and the shootings committed at that location.

{¶ 62} Furthermore, by allowing appellant's statement to Detective Gehring to be admitted into evidence, defense counsel was able to present the jury with appellant's statement that he had quit being a member of the MS-13 gang. The jury would not have otherwise heard this statement since appellant chose not to testify at his trial. Thus, defense counsel had an objectively reasonable basis for allowing appellant's statements to Detective Gehring to be admitted into evidence.

{¶ 63} Given the foregoing, appellant has failed to show that his counsel's performance fell below an objective standard of reasonable representation, and therefore has failed to prove his ineffective assistance claim.

{¶ 64} Accordingly, appellant's fifth assignment of error is overruled.

{¶ 65} Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.