[Cite as *State v. Palmer*, 2014-Ohio-5491.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NOS. CA2013-12-243 |
| Plaintiff-Appellee, | : | CA2014-01-014 |
| | : | O P I N I O N |
| - vs - | | 12/15/2014 |
| | : | |
| REGINALD L. PALMER, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2013-10-1583


Michael T. Gmoser, Butler County Prosecuting Attorney, Kimberly L. McManus, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Neal D. Schuett, 121 West High Street, Oxford, Ohio 45056, for defendant-appellant


**M. POWELL, J.**

{¶ 1} Defendant-appellant, Reginald Palmer, appeals his conviction in the Butler County Court of Common Pleas for aggravated robbery, felonious assault, and grand theft.

{¶ 2} Appellant was indicted in October 2013 on one count each of aggravated robbery with a firearm specification, felonious assault, and grand theft. The state alleged that on September 24, 2013, appellant struck Jamey Arnold in the head with a handgun, then stole Arnold's cellphone and car and fled the scene in Arnold's car. A jury trial was held in November 2013.

{¶ 3}    After the jury was selected and sworn, but prior to opening statements, defense counsel made an oral motion in limine asking the trial court to exclude the testimony of two state witnesses.  Specifically, defense counsel sought to exclude the testimony of attorney Gregory Hatcher that his law office was burglarized in September 2013 and that a handgun was stolen.  Defense counsel also sought to exclude expert testimony that DNA evidence from the victim was found on appellant's shoes.  The trial court denied the motion but offered to give a limiting instruction to the jury with regard to Hatcher's testimony.  Testimony at trial subsequently revealed the following facts.

{¶ 4}    On September 24, 2013, Arnold and Katie Henry, his estranged wife, drove to an abandoned house on South 12th Street, in Hamilton, Ohio to buy a laptop from a man known to Henry as "Reggie."  Although Henry knew Reggie from a homeless shelter, he was then living in the abandoned house on South 12th Street.  Henry had been to the house before and believed no other person lived or stayed there other than Reggie.  Once they arrived at the house, Arnold stayed in his car; Henry met Reggie on the side of the house and they entered the house through a back door.

{¶ 5}    After Reggie refused to sell the laptop to Arnold, Henry left the house and returned to Arnold's car.  As they were about to leave, Reggie came out of the house and approached the car, was given a few cigarettes by Henry, and told them he wanted to talk about the laptop.  Arnold let him in the car.  Reggie entered the car through the rear passenger door, sat on the backseat slightly behind Henry, began talking about the laptop, and asked for and was given a lighter.  Arnold and Henry both testified that Reggie then suddenly pulled out a gun and struck Arnold once in the head with the gun.  Arnold testified the gun was a chrome-colored revolver.  Henry testified the gun was silver.

{¶ 6}    Reggie ordered Arnold to get out of the car.  By then, Arnold was bleeding a lot.  Arnold crawled out of the car through the driver's door.  As he was crawling to the back of the

car, his cellphone fell on the ground. Reggie got out of the car through the driver's door, followed Arnold, and ordered Arnold to give him his cellphone. When Arnold refused, Reggie first threatened to shoot Arnold, then pointed the gun at Arnold and shot it. Henry, who was on the ground near the car after Reggie had dragged her out of the car, heard but did not witness the shooting. Thereafter, Reggie got in Arnold's car, stated "he doesn't get robbed, he robs or he's a robber," and fled the scene in Arnold's car. Henry's purse, coat, and identification card were in the car.

{¶ 7} Arnold was taken to the hospital, was admitted, and remained there one and one-half days. His head wound required seven staples. Arnold also sustained a chipped tooth and experienced severe headaches resulting in subsequent visits to the hospital. At some point after the incident, Arnold realized his cellphone was missing. It was recovered in a parking lot at Second Street and Ludlow Street and eventually returned to Arnold.

{¶ 8} Arnold was unable to identify his assailant in a photo lineup and could not identify appellant at trial as his assailant. By contrast, Henry identified appellant as the man who assaulted Arnold, both in a photo lineup after the incident and in the courtroom at trial. The revolver used by appellant was never recovered.

{¶ 9} Tim Klein lives on South 12th Street. At the time of the incident, Klein was standing outside on the street talking to his friend Tabitha McKeehan who was in her car. McKeehan testified she could not see the incident as her view was blocked by a parked car; she could however hear the incident. By contrast, Klein witnessed part of the incident.

{¶ 10} McKeehan testified she heard what sounded like a one-sided argument, with someone repeatedly stating, "You think you're going to rob me, bitch. You can't effing rob me. I'm the mothereffing robber." McKeehan then heard a gunshot, a car door slam, and tires squeal as a car was pulling off. Klein testified he heard screaming and then saw Arnold being pushed out of a car. Subsequently, appellant got out of the car and hit Arnold three or

four times before Arnold managed to get away. Shortly after, Arnold tripped and fell. Appellant went up to Arnold, told him, "You're not the robber, I'm the robber," pointed a gun at Arnold, and shot it once. Appellant then turned and looked Klein in the eye, ran back to the car, and fled the scene in the car. Klein described the gun used by appellant as a revolver with a "greyish" steel tint. Klein identified appellant as the man who assaulted Arnold both in a photo lineup seven days after the incident and in the courtroom at trial.

{¶ 11} Hatcher testified that his law office in Hamilton, Ohio was burglarized in September 2013, and that a loaded revolver and two or three prescription bottles with his name on them were stolen. Hatcher described the stolen revolver as a shiny black revolver with a brown wooden handle. Hatcher testified that no one was charged in that incident.

{¶ 12} Several law enforcement officers testified. Their testimony revealed that (1) the day after the incident, Arnold's car was found behind a building on Ludlow Street, (2) a police search of the area yielded the vehicle's keys, a shirt appellant was wearing when he assaulted Arnold, Henry's identification card, and a white cellphone Henry had loaned to appellant, (3) a shoeprint found at the scene of the incident matched the distinctive diamond pattern of the shoes appellant was wearing when he was arrested, (4) a laptop was found in the abandoned house occupied by appellant, (5) prescription bottles belonging to Hatcher were found hidden under a blanket on a cot in the abandoned house, and (6) with the exception of the bed, there was no evidence anyone else was living in the house.

{¶ 13} Appellant turned himself in at the Hamilton Police Department on September 25, 2013. During his interview with appellant, Detective Frank Botts noticed a red spot on top of appellant's right shoe. Because the red spot looked like blood, the shoes were sent to BCI&I for testing. At trial, Katherine Hall, a forensic scientist at BCI&I, testified that (1) several items were tested for DNA, including appellant's shoes, (2) the red substance on appellant's shoes tested "presumptive positive for blood," and (3) the DNA profile on

appellant's right shoe was consistent with Arnold. Hall authored a report on the items she tested.

{¶ 14} On November 19, 2013, the jury found appellant guilty as charged. Appellant was subsequently sentenced to 12 years in prison.

{¶ 15} Appellant appeals, raising three assignments of error.

{¶ 16} Assignment of Error No. 1:

{¶ 17} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT ADMITTED EVIDENCE OF AN UNRELATED BURGLARY, CONTRARY TO EVID.R. 403 AND EVID.R. 404.

{¶ 18} Appellant argues the trial court erred in allowing Hatcher to testify that his law office was burglarized and that a revolver was stolen. Appellant argues such evidence was prohibited other-act evidence under Evid.R. 404 and should have been excluded under Evid.R. 403 because it was unfairly prejudicial and misleading and confusing to the jury.

{¶ 19} As stated earlier, appellant sought to exclude Hatcher's testimony through a motion in limine before opening statements. The trial court denied the motion. At trial, defense counsel did not object to the presentation of Hatcher's testimony. Rather, during a post cross-examination sidebar conference, defense counsel asked the trial court to give a limiting instruction to the jury. Thereafter, the trial court instructed the jury as follows:

> Ladies and gentlemen, you just received testimony * * * that a break-in occurred. You're not to consider the fact that a break-in occurred and tie that in any way, shape, or form to this Defendant. That's not the purpose of that testimony.
>
> The purpose of the testimony was to show that a revolver gun was taken, along with some prescription pill bottles were taken. And that's * * * the purpose and that's the limit of that testimony, okay?

{¶ 20} A motion in limine, such as appellant's motion to exclude Hatcher's testimony, is a "'tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory

treatment of the evidentiary issue.'" *State v. Baldev*, 12th Dist. Butler No. CA2004-05-106, 2005-Ohio-2369, ¶ 11, quoting *State v. Grubb*, 28 Ohio St.3d 199, 201-202 (1986). A trial court's ruling on a motion in limine does not preserve the record on appeal. *State v. Maurer*, 15 Ohio St.3d 239, 259 (1984), fn. 14; *State v. Harris*, 12th Dist. Butler No. CA2007-11-280, 2008-Ohio-4504, ¶ 27. Instead, any claimed error regarding a trial court's decision on a motion in limine must be "preserved at trial by an objection, proffer, or ruling on the record when the issue is actually reached and the context is developed at trial." *Maurer* at *id*.; *Baldev* at ¶ 11. Failure to object to the admissibility of the evidence at trial waives any error except plain error. *Maurer* at 260, fn. 15; *Harris* at ¶ 27.

{¶ 21} Because appellant did not object to Hatcher's testimony at trial, he waived any error except plain error. *See* Crim.R. 52(B). An error does not rise to the level of a plain error unless, but for the error, the outcome of the trial would have been different. *Harris* at ¶ 29. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Landrum*, 53 Ohio St.3d 107, 111 (1990). Further, even if "evidence has been improperly admitted in derogation of a criminal defendant's constitutional rights, the admission is harmless 'beyond a reasonable doubt' if the remaining evidence alone comprises 'overwhelming' proof of defendant's guilt." *State v. Murphy*, 12th Dist. Butler No. CA2007-03-073, 2008-Ohio-3382, ¶ 29, citing *State v. Williams*, 6 Ohio St.3d 281 (1983).

{¶ 22} It is well-established that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that a person acted in conformity therewith on a particular occasion. Evid.R. 404(B); *State v. Thomas*, 12th Dist. Butler No. CA2012-11-223, 2013-Ohio-4327, ¶ 37. Such evidence may be used for other purposes, however, such as proof of motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident.  Evid.R. 404(B); *Thomas* at ¶ 37.

Nevertheless, even if the evidence meets the prerequisites of Evid.R. 404(B), it may still be

excluded under Evid.R. 403(A) if its probative value is substantially outweighed by the danger

of unfair prejudice, confusing the issues, or misleading the jury.  *Id.* at ¶ 11.  For evidence to

be excluded on this basis, "the probative value must be minimal and the prejudice great."

*State v. Morales*, 32 Ohio St.3d 252, 257 (1987).

{¶ 23} "Evid.R. 403(A) speaks in terms of unfair prejudice.  Logically, all evidence

presented by a prosecutor is prejudicial, but not all evidence unfairly prejudices a defendant.

It is only the latter that Evid.R. 403 prohibits."  *State v. Martin*, 12th Dist. Butler No. CA2007-

01-022, 2007-Ohio-7073, ¶ 16; *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶

107.  Unfairly prejudicial evidence is that which might result in an improper basis for a jury

decision. *State v. Bowman*, 144 Ohio App.3d 179, 186 (12th Dist.2001).  Unfavorable

evidence is not equivalent to unfairly prejudicial evidence.  *Id.* at 185.

{¶ 24} We find that Hatcher's testimony was properly admitted to show identity under

Evid.R. 404(B) as the identity of Arnold's assailant was an issue at trial.  Courts must be

careful when considering evidence as proof of identity to recognize the distinction between

evidence that shows that a defendant is the type of person who might commit a particular

crime and evidence that shows that a defendant is the person who committed a particular

crime. *State v. Vore*, 12th Dist. Warren No. CA2011-08-093, 2012-Ohio-2431, ¶ 43, citing

*State v. Lowe*, 69 Ohio St.3d 527, 530 (1993).  However, if (1) an enumerated matter, such

as identity, is a material issue at trial, and (2) the other-acts evidence tends to show that

matter by substantial proof, then the evidence of other acts is admissible for that limited

purpose. *See State v. Broom*, 40 Ohio St.3d 277, 281-282 (1988).  Evidence of the burglary

of Hatcher's law office and the theft of items from the law office connected the theft of the

prescription bottles with the theft of the revolver.  The prescription bottles were found hidden

under a blanket on a cot in the house occupied by appellant. The handgun used by appellant matched the description of the handgun stolen from Hatcher's law office. Hatcher's testimony was therefore properly admitted to show identity. In addition, as discussed below, the trial court gave a limiting instruction to the jury.

{¶ 25} We also find that Hatcher's testimony was not improperly admitted under Evid.R. 403. As stated earlier, the trial court instructed the jury they could not link the break-in of Hatcher's law office "in any way, shape, or form to [appellant]." After the jury was so instructed, and after the trial court inquired, defense counsel indicated he was satisfied with the limiting jury instruction.

{¶ 26} "Curative instructions are presumed to be an effective way to remedy errors that occur during trial." *State v. Parker*, 5th Dist. Stark No. 2013CA00217, 2014-Ohio-3488, ¶ 36, citing *State v. Treesh*, 90 Ohio St.3d 460 (2001). A jury is presumed to follow and comply with instructions given by the trial court. *State v. Carpenter*, 12th Dist. Butler No. CA2005-11-494, 2007-Ohio-5790, ¶ 20, citing *Pang v. Minch*, 53 Ohio St.3d 186 (1990).

{¶ 27} We find that the limiting instruction given by the trial court was appropriate and plainly instructed the jury not to link the fact Hatcher's law office was burglarized and prescription bottles and a revolver were stolen to appellant in any way, shape, or form. The purpose of the limiting instruction was to prevent the burglary of Hatcher's law office and the theft of prescription pills and a revolver from being unfairly prejudicial. We are confident that the limiting instruction minimized any possible prejudice resulting from the admission of Hatcher's testimony. Further, because a jury is presumed to follow instructions by the trial court, we conclude the jury used the testimony at issue only for its specific and limited purpose. *See State v. Vega*, 9th Dist. Summit No. 19369, 1999 WL 980589 (Oct. 27, 1999).

{¶ 28} In addition, as is fully discussed in appellant's third assignment of error, the eyewitnesses' testimony at trial and the evidence presented by the state clearly identified

appellant as the perpetrator. Given the ample evidence against appellant, the trial court's appropriate limiting instruction, appellant's lack of request for further curative instructions, and the fact the jury is presumed to follow the trial court's instructions, we find no error, let alone plain error, in the admission of Hatcher's testimony. Appellant did not establish he would not have been convicted had Hatcher's testimony been excluded.

{¶ 29} Appellant's first assignment of error is overruled.

{¶ 30} Assignment of Error No. 2:

{¶ 31} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT ALLOWED THE STATE TO OFFER EXPERT TESTIMONY IN VIOLATION OF CRIM.R. 16(K) AND THE DEFENDANT'S RIGHT TO DUE PROCESS.

{¶ 32} Appellant argues the trial court erred by not excluding Hall's expert testimony that DNA evidence from Arnold was found on appellant's shoes because the state failed to provide appellant with the evidence 21 days prior to trial as mandated by Crim.R. 16(K). Appellant asserts that the trial court's modification of the time restrictions of Crim.R. 16(K) via its failure to exclude Hall's testimony was prejudicial because it allowed the state to offer crucial incriminating evidence against appellant and affected his due process rights, namely his speedy trial rights.

{¶ 33} As stated earlier, appellant sought to exclude the foregoing expert testimony as a discovery sanction under Crim.R. 16 through a motion in limine prior to opening statements. The trial court denied the motion. At trial, defense counsel did not object to the presentation of Hall's testimony. Consequently, we once again conduct a plain error analysis due to appellant's failure to object to the admission of this evidence at trial.

{¶ 34} The record shows that the state disclosed its intention to call Hall as a witness at trial when it filed its supplemental discovery on November 12, 2013, six days before the trial. The first day of the trial was November 18, 2013. That day, following defense counsel's

motion in limine, the state explained why it failed to comply with Crim.R. 16:

> With regard to the DNA evidence, I was made aware by Detective Botts, by voice mail last Monday that some DNA testing was available from BCI&I. Obviously, last Monday was Veterans Day. I was not in the office. The next day on Tuesday, I contacted BCI&I, was made aware that they had just completed their testing results but the official report was not yet even sent out to either the prosecutor's office or the Hamilton Police Department.
>
> I requested that they scanned [sic] and email me a copy of the report prior to it being sent out in the mail. I was able to obtain a copy of the report and immediately forwarded it to [defense counsel] by email to make him aware of the genetic testing results in an effort to give him as much lead time as possible to be aware of that evidence and to speak with his client about that evidence.
>
> [I] believe, under the circumstances, the State did make every effort to provide timely notice of the report and its contents to defense counsel at the first moment available.
>
> In addition, the State also tried to provide it as quickly as possible to allow the Defendant an opportunity to request a continuance if he wished to do so. As the Court is well aware, we're here today because the Defendant wished for a speedy trial and refused to waive time.
>
> Even after receiving the DNA evidence, I believe the position of the Defense did not change.

{¶ 35} The trial court denied the motion in limine on the basis of Crim.R. 16(L). In denying the motion, the trial court noted that (1) in order to abide by appellant's speedy trial wishes, the court only had 12 days from arraignment to the setting of the trial date, (2) the state provided the DNA evidence to defense counsel as soon as possible, which occurred on November 12, 2013, (3) when the issue was brought up to the trial court on November 13, 2013, the court offered to continue the case but appellant declined the offer, and (4) two days later, on November 15, 2013, the trial court asked defense counsel if they were ready for trial, to which defense counsel replied they were.

{¶ 36} The trial court further stated: "I tried to alleviate this issue. I tried to avoid this

issue by offering a continuance a couple times." However, as the trial court explained, appellant wanted to proceed and declined the trial court's offers to continue the case. During the trial, immediately prior to Hall's testimony, the trial court called the parties to a sidebar conference and stated:

> And so for the record, I did make the offer to Defense counsel to allow him to interview this witness prior to testimony since there was an issue earlier about the timing of her report * * * for the DNA. And [defense counsel] declined to exercise that right. I just want to put that on the record.

{¶ 37} Crim.R. 16 governs discovery in criminal prosecutions. *State v. Wilson*, 12th Dist. Butler No. CA2012-12-254, 2013-Ohio-3877, ¶ 14. Crim.R. 16(K) states:

> An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

{¶ 38} Crim.R. 16(L)(1) states:

> The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

{¶ 39} "Prosecutorial violations of Crim.R. 16 are reversible only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect." *State v. Joseph*, 73 Ohio St.3d 450, 458 (1995). Notwithstanding Crim.R. 16(K), sanctions for a Crim.R. 16 discovery

violation are within the discretion of the trial court. *State v. Parson*, 6 Ohio St.3d 442, 445 (1983). The trial court "is not bound to exclude [discoverable] material at trial although it may do so at its option." *Id.* When deciding on a sanction, the trial court must impose the least severe sanction that is consistent with the purpose of the rules of discovery. *State v. Retana*, 12th Dist. Butler No. CA2011-12-225, 2012-Ohio-5608, ¶ 53.

{¶ 40} There is no doubt that the state's failure to provide appellant with the DNA report 21 days before the trial was a violation of Crim.R. 16. Nonetheless, we find that the trial court did not err, much less commit plain error, in refusing to exclude Hall's expert testimony because of the state's failure to strictly comply with Crim.R. 16(K). First, there is no indication that the violation was willful. The state asserted, and defense counsel did not dispute, that it first learned of the DNA report on November 12, 2013, six days before the trial, and that it provided defense counsel with a copy of the report that very same day.

{¶ 41} Appellant has also failed to show that foreknowledge of the DNA report would have benefited him. Appellant asserts he "should have been afforded adequate time to review, prepare his cross-examination, and ask for replicated tests, if necessary, before proceeding to trial." However, while the evidence was not disclosed to defense counsel 21 days prior to trial, it was disclosed and provided to defense counsel six days prior to trial. In addition, the trial court offered to continue the case a couple of times and allow defense counsel to interview Hall prior to testimony, but appellant declined each time and instead chose to proceed with the trial. *See State v. Horton*, 8th Dist. Cuyahoga No. 86821, 2006-Ohio-3736 (no abuse of discretion in allowing expert witness to testify at trial even though state did not notify defendant of its intention to call expert witness until the day of trial where defense counsel declined trial court's offer for an overnight continuance to prepare questioning on expert's testing methodology).

{¶ 42} Although Hall's testimony that DNA evidence from Arnold was found on

appellant's shoes tended to identify appellant as the assailant, appellant has not demonstrated he was unfairly prejudiced as a result of the testimony. As is fully discussed in appellant's third assignment of error, there is ample other evidence to support appellant's conviction for aggravated robbery, felonious assault, and grand theft. Thus, even if the trial court had excluded Hall's testimony, the outcome would not have been different. *Joseph*, 73 Ohio St.3d at 458; *Wilson*, 2013-Ohio-3877 at ¶ 19.

{¶ 43} Finally, no due process issue exists here. There is no general due process or constitutional right to discovery in a criminal case. *See State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426; *State v. Craft*, 149 Ohio App.3d 176, 2002-Ohio-4481 (12th Dist.). In addition, had appellant accepted the trial court's offer of a continuance, plainly the continuance and the late discovery violation would have been counted against the state. *See State v. Viera*, 5th Dist. Delaware No. 11CAA020020, 2011-Ohio-5263.

{¶ 44} Appellant frames this issue as one where he was forced to choose between his right to a speedy trial and his right to the 21-day prior notice of an expert witness report. The record does not support this claim. Appellant was arrested on September 25, 2013, and held in jail until his trial began on November 18, 2013. Even if appellant had remained in jail during any continuance of his trial, he could still have been tried consistent with his statutory right to a speedy trial until December 26, 2013. R.C. 2945.71(C)(2) and (E) provide that one charged with a felony offense and held in jail in lieu of bail shall be brought to trial within 90 days of arrest. When appellant's jury trial began on November 18, 2013, 53 speedy-trial days had elapsed, leaving a balance of 37 days. There is nothing in the record to suggest that a continuance of the trial would have extended its start beyond December 26, 2013.[1]

---

1. It is well-established that the day of the arrest is not included for purposes of the speedy trial calculation. *See State v. Baker*, 12th Dist. Fayette No. CA2008-03-008, 2009-Ohio-674. Accordingly, speedy trial time under the triple count provision of the statute began to run on September 26, 2013. Because the application of the triple count provision would have fallen on December 25, 2013, a holiday, the state had until December 26, 2013, to

{¶ 45} The record reflects that the trial court offered curative measures to ensure the fairness of the proceedings. However, appellant declined the offers and instead chose to proceed with the trial. He now argues that Hall's testimony should not have been considered and as a result his conviction should be reversed. "The fact that defense counsel declined to pursue the curative measures offered by the trial court does not entitle [appellant] to a finding that the trial court should have imposed the strictest remedy available, namely excluding [Hall's] testimony." *Wilson*, 2013-Ohio-3877 at ¶ 20.

{¶ 46} Appellant's second assignment of error is overruled.

{¶ 47} Assignment of Error No. 3:

{¶ 48} APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 49} Appellant argues that given "the lack of credible evidence offered by the State during the jury trial" and the fact the eyewitnesses' description of the handgun used by appellant contradicted Hatcher's description of his stolen revolver, the jury lost its way in finding appellant guilty of aggravated robbery, felonious assault, and grand theft.

{¶ 50} In determining whether a conviction is against the manifest weight of the evidence, this court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 220. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

bring appellant to trial.

{¶ 51} An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the jury's resolution of any conflicting testimony. *State v. Estes*, 12th Dist. Warren No. CA2013-12-126, 2014-Ohio-3295, ¶ 15. When reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. *Id.*

{¶ 52} Appellant was convicted of aggravated robbery, in violation of R.C. 2911.01(A)(1), which states in relevant part: "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."

{¶ 53} Appellant was also convicted of felonious assault, in violation of R.C. 2903.11(A)(2), which, as applicable here, prohibits any person from "knowingly caus[ing] or attempt[ing] to cause physical harm to another by means of a deadly weapon or dangerous ordnance." Finally, appellant was also convicted of grand theft, in violation of R.C. 2913.02(A)(1), which states in relevant part: " No person, with purpose to deprive the owner of property, shall knowingly obtain or exert control over the property [w]ithout the consent of the owner."

{¶ 54} After carefully reviewing the record, we find that the jury did not lose its way in convicting appellant of aggravated robbery with a firearm specification, felonious assault, and grand theft. Arnold testified that on September 24, 2013, a man named Reggie struck him once in the head with a revolver, subsequently shot at him, and then fled the scene in Arnold's car. As a result of the incident, Arnold was hospitalized, suffered a head wound which required seven staples, sustained a chipped tooth, and has experienced severe headaches resulting in subsequent visits to the hospital.

{¶ 55} Likewise, Henry, Arnold's estranged wife, testified that Arnold was struck in the head with a gun by Reggie and that the latter fled the scene in Arnold's car after stating that "he doesn't get robbed, he robs or he's a robber." Klein, who was talking to a friend at the time of the incident, testified that a man hit Arnold in the face three or four times, told Arnold, "You're not the robber, I'm the robber," and pointed a gun at Arnold and shot at him before fleeing the scene in a car. Both Henry and Klein identified appellant as the man who assaulted Arnold, both in a photo lineup after the incident and in the courtroom at trial. Henry's identification of appellant as the perpetrator is particularly probative as Henry knew appellant prior to the incident and spent up-close and personal time with appellant immediately prior to the incident.

{¶ 56} The state presented evidence that a shoeprint found at the scene matched the distinctive diamond pattern of the shoes appellant was wearing when he was arrested. The state also presented evidence that after Arnold's car was found the day after the incident, the police searched the area where the car was located and found the vehicle's keys, a shirt appellant was wearing when he assaulted Arnold, Henry's identification card which she had left in Arnold's car at the time of the incident, and a white cellphone Henry had loaned to appellant.

{¶ 57} The handgun used by appellant was never found. Hatcher testified that his stolen handgun was a shiny black revolver with a brown wooden handle. Arnold testified he was struck with a chrome-colored revolver. Henry testified appellant struck Arnold with a silver gun. Klein testified that the handgun used by appellant was a revolver with a "greyish" steel tint. The eyewitnesses' respective description of the handgun used by appellant is not necessarily contradictory as all three essentially described the color of the handgun as being a shade of grey. Hatcher's description of his stolen revolver is also not necessarily inconsistent with the eyewitnesses' description of the handgun used by appellant.

Appellant's hand likewise covered the handle of the handgun and the eyewitnesses likely only saw or focused on the handgun barrel.

{¶ 58} As the trier of fact in this case, the jury was in the best position to judge the credibility of witnesses and the weight to be given the evidence. *Estes*, 2014-Ohio-3295 at ¶ 15. In light of all of the foregoing, we find that appellant's conviction for aggravated robbery with a firearm specification, felonious assault, and grand theft were not against the manifest weight of the evidence.

{¶ 59} Appellant's third assignment of error is overruled.

{¶ 60} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.