[Cite as *State v. Jewell*, 2022-Ohio-2727.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-09-080 |
| | : | O P I N I O N |
| - vs - | | 8/8/2022 |
| | : | |
| JAMES JEWELL, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 20CR37521

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Thomas G. Eagle Co., L.P.A., and Thomas G. Eagle, for appellant.

**S. POWELL, J.**

{¶ 1} Appellant, James Jewell, appeals from his conviction in the Warren County Court of Common Pleas after a jury found him guilty of three counts of third-degree felony unlawful sexual conduct with a minor. For the reasons outlined below, we affirm Jewell's conviction.

{¶ 2} On December 11, 2020, a Warren County Grand Jury returned an indictment charging Jewell with three counts of third-degree felony unlawful sexual conduct with a minor in violation of 2907.04(A). The charges arose after it was discovered the then 37-year-old Jewell had been engaged in an inappropriate sexual relationship with a 15-year-old girl, J.T., between December 1, 2019 and March 28, 2020 while at Jewell's home located in Morrow, Warren County, Ohio. A three-day jury trial was held on the matter between July 26 to July 28, 2021. During trial, the jury heard testimony from a number of key witnesses. This included testimony from the victim, J.T., J.T.'s therapist and mental health counselor, Sharon Kuss, and an investigating detective with the Warren County Sheriff's Office, Detective Brandi Carter. This also included testimony from Jewell's ex-wife and from Jewell himself. The following is a summary of J.T.'s and Jewell's trial testimony.

{¶ 3} J.T., who was 16 years old at the time of trial, testified that she became best friends with Jewell's daughter, S.J., in the seventh grade when she was attending school in Morrow, Ohio. J.T. testified that she remained very close friends with S.J. even after she moved away and began attending school in Georgetown, Ohio. J.T. testified that this included her sometimes spending the night at S.J.'s house. However, when J.T. did spend the night at S.J.'s house, J.T. testified that S.J. would "always be on her computer playing with other people or talking with other people." J.T. testified it was at this time that her relationship with S.J.'s father, Jewell, began to change. J.T. testified that this included Jewell messaging her on Snapchat, paying her "compliments," calling her "pretty," and "that type of stuff."[1] J.T. testified that one of the messages she received from Jewell over

---

1. "Snapchat is a social media platform that allows participants to send pictures and text messages to each other." *Hamilton v. Combs*, 12th Dist. Butler No. CA2018-02-026, 2019-Ohio-190, ¶ 2, fn. 1, citing *State v. Hunter*, 11th Dist. Lake No. 2017-L-081, 2018-Ohio-5325, ¶ 2. "[O]ne of its core concepts [is] that any pictures, videos or messages sent between users are only available for a short time before they are deleted or otherwise become inaccessible." *Bollinger v. Ohio Dept. of Edn.*, 3d Dist. Marion No. 9-18-07, 2018-Ohio-3714, ¶ 5, fn. 2.

Snapchat included a photograph of Jewell's penis. When asked to describe what Jewell's penis looked like in that photograph, J.T. testified, "I don't remember. I was like, I don't even think – honestly, I don't think I was fifteen yet when that happened."

{¶ 4} J.T. testified the Snapchat messages between her and Jewell evolved into her and Jewell exchanging "[s]mall hugs," frequently "[k]issing" on the lips in "like a relationship type of way," and "cuddling" and watching television on Jewell's bed located in Jewell's second-floor bedroom. J.T. testified that these hugs and kisses then led to even more flirting and "playful hitting" between her and Jewell, as well as she and Jewell engaging in more intense "[s]exual touching." J.T. testified this included multiple "hand jobs" and "blow jobs." J.T. testified this also included her donning pantyhose and "slightly" moving her feet around "[i]n the air" because Jewell "liked them in pantyhose" and that was his "thing."[2] J.T. further testified that Jewell had used his "finger" to touch her vagina, that Jewell had used his mouth and tongue to touch her vagina and suck on her breasts, and that Jewell had used his penis to engage in sexual intercourse with her on two or three occasions. J.T. testified that this included one occasion where she was laying in the middle of Jewell's bed next to S.J. after she and S.J. fell asleep watching television.

{¶ 5} J.T. testified that these sex acts, as well as the exchange of "I love yous" between herself and Jewell, led her to believe that she and Jewell were in a relationship in a "[n]atural, I guess boyfriend/girlfriend type of way." However, although believing that she and Jewell were boyfriend and girlfriend, when asked if she and Jewell would ever hug or kiss in front of other people, J.T. responded "No." J.T. testified this was because she and Jewell wanted to keep their relationship a "secret" and "didn't want to get caught." J.T. also

---

2. We note that both Jewell and Jewell's trial counsel referred to this as a "foot job." J.T., however, testified that she never actually touched Jewell's body with her feet, just that she would raise her pantyhose-clad feet into the air and "slightly" move them around while Jewell watched and, from what this court can glean from the record, masturbated.

testified that she had initially lied to police about her relationship with Jewell because she "was getting scared," she "didn't want to be in trouble," and "didn't want [Jewell's] family to get 'ruined' or anything like that." J.T. additionally testified that she had lied to police because she "didn't want [her] dad to know what was going on," and "because his kids, they are my friends. I obviously wanted them to have a parent so – I just I lied, so maybe they could have a family I guess." J.T. testified that she lied again and denied that anything beyond "cuddling" and "kisses" had ever occurred between her and Jewell when she was interviewed at a local child advocacy center. J.T. testified that she did this because she was "scared," "nervous," and "didn't want to be the one in trouble."

{¶ 6} Jewell testified in his defense and denied ever having an inappropriate sexual relationship with J.T. However, although denying a sexual relationship between he and J.T. had occurred, Jewell acknowledged that he and J.T. "would give each other hugs whenever leaving or whenever dropping her off." Jewell also admitted that he and J.T. "started saying I love you," but that it did not mean anything "more than just the greeting or saying goodbye" like the way he would tell his children that he loved them. Jewell further admitted that J.T. had slept in his bed on approximately four occasions. But, even then, Jewell testified that J.T. only slept in his bed when his daughter, S.J., was with her and that it was never J.T. sleeping in his bed by herself. Jewell additionally denied ever kissing J.T. on the lips, ever performing cunnilingus on J.T., ever having sexual intercourse with J.T., or that J.T. had ever given him a "hand job," a "blow job," or a "foot job." Jewell also denied ever trying to "lead [J.T.] on" or "manipulate [J.T.] into a relationship" with him.

{¶ 7} Once both parties rested, and following deliberations, the jury returned a verdict finding Jewell guilty as charged. Approximately three weeks later, on August 18, 2021, the trial court held a sentencing hearing and sentenced Jewell to serve a total, aggregate sentence of 144 months (12 years) in prison, less 29 days of jail-time credit. The

trial court also designated Jewell a Tier II sex offender and notified Jewell that he would be subject to a mandatory five-year postrelease control term upon his release from prison. Jewell filed a timely notice of appeal on September 2, 2021. Oral argument was held before this court on July 5, 2022. Jewell's appeal now properly before this court for decision, Jewell has raised two assignments of error for review.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED IN EXCLUDING EVIDENCE FOR DISCOVERY VIOLATIONS.

{¶ 10} In his first assignment of error, Jewell initially argues the trial court erred by excluding several photographs from evidence depicting the "distinctive markings" on his penis. The trial court found the exclusion of those photographs was the appropriate discovery sanction for trial counsel's failure to disclose the photographs to the state prior to trial. We find no merit to this argument.

{¶ 11} Crim.R. 16 governs discovery in criminal cases. *State v. Johnson*, 12th Dist. Fayette No. CA2018-06-013, 2019-Ohio-754, ¶ 35. "Crim.R. 16(H) addresses a defendant's obligation to provide the prosecution with reciprocal discovery." *State v. Ferricci*, 8th Dist. Cuyahoga No. 110208, 2022-Ohio-1393, ¶ 34; *State v. Kopchak*, 5th Dist. Muskingum No. CT2017-0036, 2018-Ohio-1136, ¶ 16. Specifically, Crim.R. 16(H) provides, "[i]f the defendant serves a written demand for discovery or any other pleading seeking disclosure of evidence on the prosecuting attorney," something that Jewell did in this case, "a reciprocal duty of disclosure by the defendant arises without further demand by the state." Therefore, "according to the plain language of Crim.R. 16(H), the [s]tate no longer has an obligation to file a written demand for discovery. Instead, a reciprocal duty arises by operation of the rule when a defendant files a written demand for discovery." *State v. Belville*, 4th Dist. Lawrence No. 19CA27, 2021-Ohio-820, ¶ 21; *State v. Kesler*, 3d Dist.

Seneca No. 13-13-35, 2014-Ohio-3376, ¶ 8 ("[t]he reciprocal requirements of Criminal Rule 16 for discovery are triggered by the request for discovery by the defendant").

{¶ 12} The overall objective behind Crim.R. 16 is to remove the element of gamesmanship from a criminal prosecution so that a fair trial can be had. *State v. Howard*, 56 Ohio St.2d 328, 333 (1978) ("[t]he philosophy of the Criminal Rules is to remove the element of gamesmanship from a trial"). The purpose of Crim.R. 16 is also to prevent surprise and the secreting of evidence favorable to one party. *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3 (1987) ("[t]he purpose of discovery rules is to prevent surprise and the secreting of evidence favorable to one party"). This is evidenced by the language found in Crim.R. 16(H)(3), which provides, in pertinent part, the following:

> (H) * * * The defendant shall provide copies or photographs, or permit the prosecuting attorney to copy or photograph, the following items related to the particular case indictment, information or complaint, and which are material to the innocence or alibi of the defendant, or are intended for use by the defense as evidence at the trial, or were obtained from or belong to the victim, within the possession of, or reasonably available to the defendant * * *:
>
> (3) Any evidence that tends to negate the guilt of the defendant, or is material to punishment, or tends to support an alibi. However, nothing in this rule shall be construed to require the defendant to disclose information that would tend to incriminate that defendant[.]

{¶ 13} "Crim.R. 16(L) sets forth the trial court's role in regulating discovery between the parties." *State v. Bugara*, 5th Dist. Stark No. 2018CA00039, 2019-Ohio-39, ¶ 32. Pursuant to Section (1) of that rule:

> The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the

circumstances.

Therefore, based on the plain language found in Crim.R. 16(L)(1), "'when a party fails to provide discovery, the trial court may, inter alia, grant a continuance, prohibit the party from introducing into evidence the undisclosed material, or make any other order it deems just under the circumstances.'" *State v. Robinson*, 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 21, quoting *State v. Proby*, 10th Dist. Franklin No. 14AP-1067, 2015-Ohio-3364, ¶ 33.

{¶ 14} "It is within the trial court's sound discretion to decide what sanction to impose for a discovery violation." *State v. Edmonds*, 12th Dist. Warren No. CA2014-03-045, 2015-Ohio-2733, ¶ 37, citing *State v. Davis*, 12th Dist. Butler No. CA2010-06-143, 2011-Ohio-2207, ¶ 20. When deciding on a sanction, however, "the trial court must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *State v. Palmer*, 12th Dist. Butler Nos. CA2013-12-243 and CA2014-01-014, 2014-Ohio-5491, ¶ 39, citing *State v. Retana*, 12th Dist. Butler No. CA2011-12-225, 2012-Ohio-5608, ¶ 53. "Exclusion of evidence is a permissible sanction for a criminal defendant's discovery violation as long as the exclusion does not completely deny the defendant the constitutional right to present a defense." *State v. Bellamy*, 12th Dist. Butler No. CA2013-09-170, 2014-Ohio-5187, ¶ 25, citing *Davis* at ¶ 21; *State v. Parson*, 6 Ohio St.3d 442, 445 (1983) ("[t]he court is not bound to exclude such material at trial although it may do so as its option").

{¶ 15} We review a trial court's decision to exclude evidence as a discovery sanction for an abuse of discretion. *State v. Bowen*, 5th Dist. Holmes No. 19CA0007, 2020-Ohio-24, ¶ 37, citing *State v. Barrios*, 9th Dist. Lorain No. 06CA009065, 2007-Ohio-7025, ¶ 18. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, ¶ 34, citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). "A decision is unreasonable where

- 7 -

a sound reasoning process does not support it." *State v. Miller*, 12th Dist. Butler No. CA2016-01-007, 2016-Ohio-7360, ¶ 7, citing *AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161 (1990).

{¶ 16} Jewell claims the trial court's decision to exclude the photographs depicting the "distinctive markings" on his penis from evidence as a discovery sanction denied him the opportunity to present "at least part" of his defense by relegating him to a "my word against yours" strategy when there was "objective," photographic evidence that proved he had not been engaged in an inappropriate sexual relationship with the victim. This is because, according to Jewell, allowing him to introduce photographs of the markings on his penis after J.T. testified and denied seeing any markings on Jewell's penis would have provided indisputable proof that J.T.'s allegations were false since she "obviously" would have had the "opportunity to see them if she had seen it." However, despite what Jewell appears to be arguing, the fact that J.T. testified and denied seeing any markings on Jewell's penis does not necessarily mean Jewell had not engaged in an inappropriate sexual relationship with J.T. Far from it. This is particularly true in this case when considering Jewell's ex-wife also testified and denied knowing if Jewell had any distinctive markings on his penis.

{¶ 17} The trial court's decision to exclude the photographs of Jewell's penis from evidence also did not deprive Jewell of the opportunity to present a defense. The trial court's decision instead merely precluded Jewell from presenting that portion of his defense in that particular medium, i.e., photographic evidence as opposed to through his own trial testimony. This becomes clear when reviewing Jewell's trial testimony about his penis. Jewell specifically testified and described his genitalia as having approximately 15 "dark red" noticeable spots on his scrotum. This also includes Jewell testifying that his penis, which Jewell described as being "not that long," has a distinctive mole on the top right side

- 8 -

with a "flat flap of skin that sticks up past the mole" that measures "almost a centimeter wide, maybe." Therefore, under these circumstances, and when considering Jewell was not precluded from presenting his defense, the trial court did not abuse its discretion by excluding the photographs of Jewell's penis from evidence as a discovery sanction. Jewell's claim otherwise lacks merit.

{¶ 18} Jewell also argues his trial counsel provided him with ineffective assistance by failing to disclose the photographs of his penis to the state prior to trial. We again disagree.

{¶ 19} "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7. Because of this, "[a]n appellate court must give wide deference to the strategic and tactical choices made by trial counsel in determining whether counsel's performance was constitutionally ineffective." *State v. Reeves*, 12th Dist. Clermont No. CA2020-01-001, 2020-Ohio-5565, ¶ 32. Therefore, to establish an ineffective assistance of counsel claim, Jewell must demonstrate both that (1) his trial counsel's performance was deficient; and (2) his trial counsel's deficient performance was prejudicial to him. *State v. Simpson*, 164 Ohio St.3d 102, 2020-Ohio-6719, ¶ 18, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). The failure to make an adequate showing on either prong is fatal to an ineffective assistance of counsel claim. *State v. Zielinski*, 12th Dist. Warren No. CA2010-12-121, 2011-Ohio-6535, ¶ 50.

{¶ 20} Jewell argues he received ineffective assistance of counsel because his trial counsel's "failure to comply with the Discovery Rules resulted in the exclusion of material evidence on an important issue or credibility in a disputed case." However, even when assuming Jewell's trial counsel's performance was deficient, Jewell cannot establish any

resulting prejudice therefrom. *See State v. Lawson*, 165 Ohio St.3d 445, 2021-Ohio-3566, ¶ 93 ("prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different"). This is because, as noted above, the trial court's decision to exclude the photographs of Jewell's penis from evidence did not deprive Jewell of the opportunity to present a defense. The trial court's decision instead merely precluded Jewell from presenting that portion of his defense in that particular medium, i.e., photographic evidence as opposed to through his own trial testimony. Therefore, because Jewell cannot demonstrate any resulting prejudice, it simply cannot be said that Jewell's trial counsel provided him with ineffective assistance. Accordingly, finding no merit to any of Jewell's arguments raised herein, Jewell's first assignment of error lacks merit and is overruled.

{¶ 21} Assignment of Error No. 2:

{¶ 22} THE TRIAL COURT ERRED IN ADMITTING EVIDENCE THAT VOUCHED FOR THE CREDIBILITY OF THE ACCUSING WITNESS.

{¶ 23} In his second assignment of error, Jewell argues the trial court erred by admitting certain testimony elicited from Sharon Kuss, J.T.'s therapist and mental health counselor, and from Detective Carter, an investigating detective with the Warren County Sheriff's Office. We disagree.

{¶ 24} When properly objected to, this court reviews a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *State v. Gerde*, 12th Dist. Clermont No. CA2016-11-077, 2017-Ohio-7464, ¶ 8. Jewell, however, did not object to any of the challenged testimony elicited from Kuss and Detective Carter for which he now

complains.[3] By failing to object, Jewell has waived all but plain error on appeal. *State v. Grimm*, 12th Dist. Clermont No. CA2018-10-071, 2019-Ohio-2961, ¶ 21, citing *State v. Rogers*, 12th Dist. Butler No. 2017-08-112, 2018-Ohio-1356, ¶ 24. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "An error does not rise to the level of a plain error unless, but for the error, the outcome of the trial would have been different." *State v. Cooperstein*, 12th Dist. Warren No. CA2018-09-117, 2019-Ohio-4724, ¶ 49, citing *Palmer*, 2014-Ohio-5491 at ¶ 21.

{¶ 25} "'Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Harner*, 12th Dist. Brown No. CA2019-10-012, 2020-Ohio-3071, ¶ 24, quoting *State v. Landrum*, 53 Ohio St.3d 107, 111 (1990). That is to say, a finding of plain error is made "'only in the extremely rare case * * * where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" *State v. Culler*, 7th Dist. Columbiana No. 20 CO 0030, 2021-Ohio-4642, ¶ 15, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-123 (1997).

{¶ 26} Jewell argues it was error for the trial court to allow Kuss and Detective Carter

---

3. In his reply brief, Jewell raises a new argument claiming his trial counsel was ineffective for "the failure of trial counsel to more precisely object" to Kuss' and Detective Carter's challenged testimony. However, even assuming Jewell's characterization of the record were true, which we find it is not, Jewell cannot raise this argument by way of his reply brief. It is well-established that "[a] reply brief is not to be used by an appellant to raise new assignments of error or issues for consideration; it is merely an opportunity to reply to the appellee's brief." *State v. Singh*, 12th Dist. Butler No. CA2000-05-097, 2001 Ohio App. LEXIS 1591, *8, fn. 1 (Apr. 2, 2001). Because of this, "[a]ppellate courts generally will not consider a new issue presented for the first time in a reply brief." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 18. Therefore, because it is within this court's discretion whether to address arguments raised for the first time by way of the reply brief, we decline to address Jewell's argument alleging his trial counsel was ineffective for not making a "more precise" objection to Kuss' and Detective Carter's challenged testimony. We do this because, as explained more fully below, it was not error, plain or otherwise, for the trial court to admit the testimony elicited from Kuss and Detective Carter for which Jewell complains.

to testify as to why J.T. may have initially denied being sexually abused "and essentially why that was normal and consistent and not indicative of a lack of credibility on J.T.'s part." Jewell argues that allowing Kuss and Detective Carter to testify in this manner improperly bolstered and vouched for J.T.'s credibility and served as a "backdoor" way to "introduce her hearsay statements implicating [him]." However, although we agree that it is generally improper for a witness to express his or her opinion of a child declarant's veracity, *see State v. Boston*, 46 Ohio St.3d 108 (1989), paragraph one of the syllabus, there is an important distinction "between expert testimony that a child witness is telling the truth and evidence which bolsters a child's credibility insofar as it supports the prosecution's efforts to prove that a child has been abused." (Emphasis deleted.) *State v. Stowers*, 81 Ohio St.3d 260, 262 (1998).

{¶ 27} That is to say, while a witness is generally precluded from "offering an opinion as to the truth of a child's statements (e.g., the child does or does not appear to be fantasizing or to have been programmed, or is or is not truthful in accusing a particular person)," a witness is not precluded from offering testimony that serves as "additional support for the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity." (Emphasis deleted.) *Id.* at 262-263; *State v. Ruggles*, 12th Dist. Warren CA2019-05-038 and CA2019-05-044 thru CA2019-05-046, 2020-Ohio-2886, ¶ 65 (it is "only statements that directly support the veracity of the witness [that] are prohibited" under *Boston*). "This distinction recognizes the reality that, 'indirect bolstering of a victim's credibility is not the same as the direct rendering of an opinion as to a victim's veracity that was involved in *Boston*.'" *State v. Fannin*, 12th Dist. Warren No. CA2020-03-022, 2021-Ohio-2462, ¶ 62, quoting *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 30.

{¶ 28} In this case, neither Kuss' nor Detective Carter's testimony for which Jewell

complains offered an opinion, either directly or indirectly, as to the truth and veracity of J.T.'s sexual abuse allegations. Kuss' and Detective Carter's challenged testimony merely explained why they believed it was normal and consistent for a child victim of sexual abuse to initially deny the sexual abuse had occurred. Therefore, under these circumstances, we cannot say the trial court committed error, plain or otherwise, in admitting Kuss' or Detective Carter's testimony at trial given that such testimony it did not directly support J.T.'s veracity as prohibited by *Boston*. This is because, as explained by the Ohio Supreme Court, "[a]n expert witness's testimony that the behavior of an alleged child victim of sexual abuse is consistent with behavior observed in sexually abused children is admissible under the Ohio Rules of Evidence." *Stowers* at 261.

{¶ 29} In so holding, we find it significant that J.T. testified at trial and was subject to rigorous cross-examination regarding her allegations of sexual abuse that she had levied against Jewell. The jury was therefore clearly able to independently assess J.T.'s credibility for itself without any assistance from either Kuss' or Detective Carter's trial testimony. *See, e.g., State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 59 ("Lastly, unlike the child victim in *Boston* who was unavailable to testify, E.M. testified at trial and described the abuse in detail. E.M. was subject to cross-examination regarding her allegations and the trial court was clearly able to independently assess her credibility."). Accordingly, finding no error, plain or otherwise, in the trial court's decision to admit the challenged testimony elicited from Kuss and Detective Carter at issue, Jewell's second assignment of error lacks merit and is overruled.

{¶ 30} Judgment affirmed.

M. POWELL, P.J., and PIPER, J., concur.