[Cite as *State v. Harner*, 2020-Ohio-3071.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2019-10-012 |
| Appellee, | : | O P I N I O N<br>5/26/2020 |
| | : | |
| - vs - | | |
| | : | |
| JERRY WAYNE HARNER, JR., | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. CRI2018-2273

Zachary A. Corbin, Brown County Prosecuting Attorney, Mary McMullen, 750 Mt. Orab Pike, Suite 1, Georgetown, Ohio 45121, for appellee

Stephenie Lape Wolfinbarger, PLLC, Stephenie Lape Wolfinbarger, 810 Sycamore Street, 6th Floor, Cincinnati, Ohio 45202, for appellant

**M. POWELL, J.**

{¶ 1} Appellant, Jerry Wayne Harner, Jr., appeals his conviction in the Brown County Court of Common Pleas for failure to comply with an order or signal of a police officer.

{¶ 2} In the late evening hours of July 23, 2018, Fayetteville Police Chief Chad

Essert was on routine patrol in the village of Fayetteville, sitting across the street from Kiley's Market, a 24-hour market and gas station located at the intersection of United States Routes 50 and 68. While patrolling, Chief Essert's suspicions were aroused by a man and woman walking from the store to a Jeep parked at the gas pumps. Chief Essert ran the license plate of the Jeep and discovered it was registered to a Ford pickup truck. As Chief Essert drove to Kiley's parking lot to investigate, the Jeep moved to a different location in the parking lot and backed into a parking spot. Chief Essert activated the light bar of his police cruiser and parked his cruiser perpendicular to and 12-15 feet away from the Jeep. He then instructed the male driver to put the Jeep in park and turn off the engine. The driver did not comply and drove off. A high-speed chase ensued.

{¶ 3} While pursuing the Jeep, Chief Essert requested assistance from neighboring police departments. Mt. Orab Police Officer and canine handler Bradley Jones responded to Chief Essert's request and deployed stop sticks.[1] The male driver drove the Jeep over the stop sticks, causing the tires to deflate. The driver continued to drive on the rims until the Jeep eventually came to a stop near a tall cornfield. The driver exited the Jeep and fled into the cornfield. Neither Chief Essert nor Officer Jones and his canine pursued the driver in the cornfield. The driver was not apprehended that evening. During an inventory search of the Jeep, Chief Essert discovered an Ohio Identification Card bearing the name, address, and photograph of appellant. The card was found on the floorboard of the Jeep on the driver's side. During the 25-minute high-speed chase, the driver travelled up to 105 m.p.h. and ran through one traffic light and four stop signs.

{¶ 4} Based upon those events, appellant was indicted on one count of failure to

---

1. Stop sticks are devices designed to puncture a vehicle's tires and disable the vehicle. *State v. Jones*, 12th Dist. Butler No. CA98-10-222, 1999 Ohio App. LEXIS 4160, *3 (Sep. 7, 1999). Chief Essert described them as "an encased, plastic stick approximately four feet [long]" with "small, sharp, hollow tubes." When a vehicle drives over the sticks, the hollow tubes pierce the tires, allowing air to quickly flow out of the tires.

comply with an order or signal of a police officer with a specification that the operation of the motor vehicle caused a substantial risk of serious physical harm to persons or property, a third-degree felony in violation of R.C. 2921.331(B) and (C)(5)(a)(ii). The case proceeded to a jury trial on October 3, 2019. The state presented the testimony of Chief Essert and Officer Jones. Chief Essert testified that based upon his observation of the male driver, first at Kiley's and subsequently right before the driver fled into the cornfield, and the discovery of appellant's identification card in the Jeep, he had "no doubt" that appellant was the male driver of the Jeep involved in the high-speed chase on July 23, 2018.

{¶ 5} At the conclusion of the state's case-in-chief, appellant moved for acquittal pursuant to Crim.R. 29. After the trial court denied the motion, appellant rested his defense without testifying or presenting witnesses on his behalf. The jury found appellant guilty as charged. The trial court subsequently sentenced appellant to a 30-month prison term and imposed a lifetime driver's license suspension.

{¶ 6} Appellant now appeals, raising two assignments of error.[2]

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED IN OVERRULING MR. HARNER'S CRIMINAL RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT A CONVICTION AND THE COURT FURTHER ERRED IN ENTERING A GUILTY FINDING WHERE THE JURY'S VERDICT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 9} Appellant challenges his failure to comply conviction, arguing that the trial

---

2. We note with disapproval appellant's shotgun approach of raising several issues that require different legal analyses under each assignment of error, instead of properly raising each specific issue in separate assignments of error. *See* Loc.R. 11(B)(3); *State v. Wilson*, 12th Dist. Warren No. CA2018-03-022, 2019-Ohio-338, ¶ 24. "App.R. 16(A)(7) requires separate arguments for each assignment of error. While appellate courts may jointly consider two or more assignments of error, the parties do not have the same option in presenting their arguments." *Keffer v. Cent. Mut. Ins. Co.*, 4th Dist. Vinton No. 06CA652, 2007-Ohio-3984, ¶ 8, fn. 2; *State v. Dukes*, 4th Dist. Scioto Nos. 16CA3745 and 16CA3760, 2017-Ohio-7204, ¶ 59.

court erred in denying his Crim.R. 29 motion for acquittal and that the conviction was against the manifest weight of the evidence because the state failed to prove he was the driver of the Jeep.

{¶ 10} Specifically, appellant discounts Chief Essert's testimony of his initial encounter with the driver at Kiley's because the driver was seated in the Jeep, the police chief was 12-15 feet away from the Jeep, and it was dark. Appellant further dismisses as unreliable Chief Essert's identification of the driver as the latter fled into the cornfield because the police chief was either seated in his police cruiser or otherwise occupied with the female passenger of the Jeep. Finally, appellant dismisses the significance of the discovery of his identification card in the Jeep because there was no connection between appellant and the Jeep or its license plate, there was no evidence as to how the identification card came to be in the Jeep or how long it had been there, and the police failed to undertake efforts which may have made the case stronger, such as requesting video footage from Kiley's, retrieving items that had fallen out of the Jeep during the high-speed chase, obtaining a statement from the female passenger, recovering fingerprints from the Jeep, or canvassing the neighborhood near the cornfield for witnesses.

{¶ 11} The review of a trial court's denial of a Crim.R. 29 motion for acquittal is governed by the same standard as that used for determining whether a verdict is supported by sufficient evidence. *State v. Listo*, 12th Dist. Clermont No. CA2010-02-016, 2010-Ohio-4408, ¶ 10. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*; *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 12} In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable

inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Listo* at ¶ 18. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Peyton*, 12th Dist. Butler No. CA2015-06-112, 2017-Ohio-243, ¶ 42. A determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency. *Id.*

{¶ 13} The sole issue in this case was the identity of the Jeep's male driver. It is well established that in order to warrant a conviction, "the evidence must establish beyond a reasonable doubt the identity of the accused as the person who committed the crime." *State v. Scott*, 3 Ohio App.2d 239, 244 (11th Dist.1965); *State v. Raleigh*, 12th Dist. Clermont Nos. CA2009-08-046 and CA2009-08-047, 2010-Ohio-2966, ¶ 45. The identity of the accused as the perpetrator of the crime may be established by direct or circumstantial evidence. *Raleigh* at ¶ 45.

{¶ 14} Chief Essert testified that Kiley's parking lot was "extremely well lit." He further testified that as he pulled in the parking lot and parked 12-15 feet away from the Jeep, he activated both the overhead light bar of his cruiser and the spotlight across the light bar. Chief Essert explained that when the spotlight is activated, it "completely light[s] up the front of the light bar [and] it's real blinding." The police chief stated he then exited his cruiser and, staying behind or in the vicinity of his driver's door for safety purposes, ordered the male driver to turn off the Jeep. Following this testimony, the police chief positively identified appellant as the Jeep's male driver on the parking lot of Kiley's.

{¶ 15} Chief Essert next testified that his police cruiser was right behind the Jeep when it came to a stop near a cornfield. As the male driver exited the Jeep, he looked back

toward the police chief before fleeing into the cornfield. Chief Essert stated that the area in front of his cruiser was "pretty well lit [and] that you could see what was going on" as his overhead lights were on. A subsequent search of the Jeep yielded appellant's identification card on the floorboard of the vehicle on the driver's side. Chief Essert testified that the individual whose photo was on the identification card was the same person he had observed, first at Kiley's and later jumping out of the Jeep near the cornfield. At the conclusion of his direct examination, Chief Essert once again unequivocally identified appellant as the male driver of the Jeep involved in the high-speed chase on July 23, 2018.

{¶ 16} On cross-examination, Chief Essert testified that on the day of the incident, appellant was sporting shorter hair and shorter facial hair than on the photograph of his identification card. The police chief stated that in fact, the length of appellant's hair on the day of the incident was "much shorter[,] like he is today." Despite the hair length difference between the photograph on appellant's identification card and the male driver, Chief Essert stated he could tell the driver of the Jeep was appellant. At the conclusion of his cross-examination, Chief Essert once again positively identified appellant as the male driver of the Jeep involved in the high-speed chase on July 23, 2018. Asked whether there could be a possibility that the driver was not appellant but "someone similar looking," the police chief replied, "No."

{¶ 17} Chief Essert explained that police officers and the canine did not pursue the driver into the cornfield for safety reasons as it was dark and the corn was well above six feet tall. Moreover, the canine was not trained to apprehend suspects. Chief Essert further explained why the Fayetteville Police Department did not or could not undertake the efforts listed in appellant's argument.

{¶ 18} Upon thoroughly reviewing the record, we find that the state presented ample evidence to show that appellant was the male driver of the Jeep involved in the high-speed

chase on July 23, 2018. This "case was dependent upon the jury's findings regarding the credibility of witnesses and weight given to the evidence as it relates to the perpetrator's identity." *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 41. Based on the verdict, the jury clearly believed Chief Essert's testimony that he had "no doubt" appellant was the Jeep's male driver. The jury was in the best position to judge the credibility of the police chief, and we will not disturb its credibility determination. *See State v. Harding*, 12th Dist. Madison No. CA2016-11-029, 2017-Ohio-8930; *State v. DeHass*, 10 Ohio St.2d 230 (1967).

{¶ 19} In light of the foregoing, we find that the evidence presented at trial does not weigh heavily in favor of acquittal and that the jury did not clearly lose its way and create a manifest miscarriage of justice in finding appellant guilty of failure to comply with an order or signal of a police officer. Appellant's failure to comply conviction is therefore not against the manifest weight of the evidence. Our determination that appellant's conviction is supported by the weight of the evidence is also dispositive of the issue of sufficiency. *Peyton*, 2017-Ohio-243 at ¶ 48. The trial court, therefore, did not err in denying appellant's Crim.R. 29 motion for acquittal.

{¶ 20} Appellant's first assignment of error is overruled.

{¶ 21} Assignment of Error No. 2:

{¶ 22} IT WAS PLAIN ERROR FOR THE TRIAL COURT TO ALLOW OTHERBAD ACTS TESTIMONY BY CHIEF ESSERT DEPRIVING MR. HARNER OF DUE PROCESS AND A FAIR TRIAL AND MR. HARNER WAS DEPRIVED OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN COUNSEL DID NOT RAISE AN OBJECTION TO THE ADMISSION OF THIS HIGHLY PREJUDICIAL EVIDENCE. (SIC)

{¶ 23} Chief Essert testified that upon running appellant's personal information through LEADS, he learned that appellant had a suspended driver's license and outstanding

warrants. Appellant argues that the trial court erred in allowing Chief Essert to testify about appellant's suspended driver's license and outstanding warrants because such evidence was inadmissible other-act evidence under Evid.R. 404(B).

{¶ 24} Appellant concedes he is limited to a review for plain error because he did not object to the challenged testimony at trial. An error does not rise to the level of a plain error unless, but for the error, the outcome of the trial would have been different. *State v. Palmer*, 12th Dist. Butler Nos. CA2013-12-243 and CA2014-01-014, 2014-Ohio-5491, ¶ 21. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Landrum*, 53 Ohio St.3d 107, 111 (1990). The accused bears the burden to demonstrate plain error. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 16.

{¶ 25} A trial court has broad discretion in the admission and exclusion of evidence, including evidence of other acts under Evid.R. 404(B). *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 67. A reviewing court should not disturb evidentiary decisions absent an abuse of discretion that has created material prejudice. *Id.*; *State v. Vore*, 12th Dist. Warren No. CA2011-08-093, 2012-Ohio-2431, ¶ 40.

{¶ 26} Evid.R. 404(B) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. Such evidence may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 404(B).

{¶ 27} "Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 15. "[E]vidence of other acts is admissible

- 8 -

if it is offered for a purpose other than to prove the character of a person in order to show action in conformity with that character, Evid.R. 404(B), it is relevant when offered for that purpose, Evid.R. 401, and the danger of unfair prejudice does not substantially outweigh its probative value, Evid.R. 403." *Kirkland*, 2014-Ohio-1966 at ¶ 68, citing *Williams* at ¶ 20.

{¶ 28} Evidence of appellant's suspended driver's license and outstanding warrants was relevant to the failure to comply offense, was used for a legitimate purpose, and the probative value was not substantially outweighed by the danger of unfair prejudice.

{¶ 29} In order to prove a violation of R.C. 2921.331(B), the state had to prove that appellant acted willfully in fleeing from Chief Essert. Evidence that appellant was driving with a suspended license and had outstanding warrants was relevant to and presented for the legitimate purpose of showing appellant's motive and intent in fleeing from the police chief. *State v. Craig,* 5th Dist. Licking No. 17-CA-61, 2018-Ohio-1987, ¶ 45; *see also State v. Kaser*, 3d Dist. Hancock No. 5-98-11, 1998 Ohio App. LEXIS 5096 (Oct. 15, 1998). For the same reason, the evidence was also additional incidental proof of the identity of the Jeep driver. *See* Evid.R. 404(B). The evidence was therefore presented for a valid purpose other than to show appellant's propensity or inclination to commit crime or that he acted in conformity with bad character. *See Kirkland*, 2014-Ohio-1966 at ¶ 69.

{¶ 30} Finally, the probative value of the other-act evidence was not substantially outweighed by the danger of unfair prejudice. Chief Essert's testimony that appellant had a suspended driver's license and outstanding warrants was brief and general in nature. The testimony did not mention any particular crime and did not attempt to show appellant's propensity or inclination to commit crime or that he acted in conformity with bad character. Other than a single, brief reference to the evidence during the state's closing argument, neither party focused on the testimony. After reviewing the record, this court is not concerned that the challenged testimony affected the outcome of the case. The trial court,

therefore, did not abuse its discretion in allowing Chief Essert to testify about this other-act evidence.

{¶ 31} Under his second assignment of error, appellant further argues that his trial counsel was ineffective because she failed to object to Chief Essert's testimony that appellant had a suspended driver's license and outstanding warrants.

{¶ 32} To prevail on his ineffective assistance of counsel claim, appellant must show that his trial counsel's performance was deficient and that he was prejudiced as a result. *State v. Marcum*, 12th Dist. Butler No. CA2017-05-057, 2018-Ohio-1009, ¶ 43; *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S. Ct. 2052 (1984). Trial counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Strickland* at 688. To show prejudice, appellant must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different. *Id.* at 694. The failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim. *Marcum* at ¶ 44.

{¶ 33} Trial counsel was not ineffective for failing to object to Chief Essert's testimony that appellant had a suspended driver's license and outstanding warrants. "Having determined that the complained of 'other acts' evidence did not violate Evid.R. 404(B), we find that appellant has failed to demonstrate that his trial counsel's performance was deficient." *In re D.J.,* 12th Dist. Warren No. CA2019-02-010, 2020-Ohio-1317, ¶ 13. Even assuming that trial counsel should have objected to the police chief's testimony, appellant has not established that he was prejudiced as a result. Given the evidence presented at trial and discussed in the first assignment of error, we find that the state's evidence of appellant's guilt is compelling and that appellant cannot establish a reasonable probability that but for counsel's errors, the outcome of his trial would have been different.

{¶ 34} Appellant's second assignment of error is overruled.

{¶ 35} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.