[Cite as *State v. Bostick*, 2022-Ohio-4228.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |  |
|---|---|---|---|
| STATE OF OHIO, | : | | |
| Appellee, | : | CASE NOS. CA2022-03-013 | CA2022-04-015 |
| | : | | |
| - vs - | : | O P I N I O N | |
| | : | 11/28/2022 | |
| JEFFREY S. BOSTICK, | : | | |
| Appellant. | : | | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 21CR38758

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Craig A. Newburger, for appellant.

**HENDRICKSON, J.**

{¶1} Appellant, Jeffrey S. Bostick, appeals from his conviction in the Warren County Court of Common Pleas for failure to comply with the order or signal of a police officer. For the reasons set forth below, we affirm his conviction.

{¶2} On November 29, 2021, Springboro Police Officer Cody Baker was monitoring traffic in Springboro, Ohio while in a marked police cruiser. Around 9:30 a.m., he received

a notification that a silver Buick sedan bearing a stolen license plate had entered the city near Hazel Woods Park. Officer Baker drove towards the area and located the Buick by the intersection of State Route 73 and Sharts Road. Though the officer could see that there were two occupants in the vehicle, he was unable to provide a physical description of the occupants.

{¶3} For officer safety, Officer Baker did not try to stop the Buick until Franklin Police Officer Patrick Holland arrived as backup. By this time, the Buick had entered northbound I-75. Officer Baker activated his cruiser's overhead lights and initiated a traffic stop of the Buick. Though the Buick briefly moved over to the shoulder and slowed down, the vehicle did not come to a stop. It proceeded to reenter traffic and began traveling at excessive rates of speed, between 89 m.p.h. and 117 m.p.h. Officers Baker and Holland gave pursuit with their lights and sirens activated.

{¶4} The Buick exited I-75 at the Austin Boulevard exit and proceeded towards Miamisburg. Reaching speeds of 100 m.p.h., the Buick drove into oncoming traffic, failed to obey stop signs and traffic lights, and on one occasion, nearly struck a citizen in an intersection. Officers eventually terminated their pursuit of the Buick after it turned onto Main Street. At this time, Officer Holland was in his police cruiser at a nearby intersection when the Buick drove straight at him. Officer Holland had to maneuver his cruiser to avoid a collision with the Buick. As the Buick went past him, Officer Holland was able to see the Buick's driver and passenger from less than ten yards away.

{¶5} Officer Holland described the driver of the Buick as having a clean, buzz-cut haircut, a scruffy three-day beard, and a darker complexion or darker facial features. He did not observe any facial tattoos on the driver. Officer Holland described the passenger in the Buick as having longer hair and a longer beard. In a report created after the police

chase had ended but before the driver and passenger of the Buick had been apprehended, Officer Holland indicated that the driver was bald with "darker facial features, a darker complexion." He also indicated that he was unsure of whether the driver was white or black.

{¶6} Miami Township Police Officer Scott Snell responded to the area where the police chase had terminated. He located the Buick parked near Jefferson Street and Genetta Drive. The vehicle was unoccupied. Officer Snell ran the Buick's VIN and discovered the vehicle had been reported stolen. A resident who lived in the area where the Buick was parked advised Officer Snell that she had seen two males wearing hooded sweatshirts and a Carhart jacket run from the vehicle. A second resident, Nick Rizzo, advised that his property has a trail at the back of it, which follows a wooded creek line. He had found two white men in their late 20s crouched down hiding in the weeds behind his property near the creek line. One of the men had a beard and one was wearing a Carhart jacket. When the men saw Rizzo, they jumped up and took off running "pretty hard" along the creek in the direction of Cherry Hill.

{¶7} A canine unit was called in to search for the men along the wooded creek line. During the search, a day planner and toiletry bag was found in the creek bed. The items appeared as if they had not been there long, as they were not covered with mud, leaves, or debris. The day planner contained letters and personnel effects for "Matthew Lee." Officers continued to search the area, with Miamisburg Police Officer Nyles Green finding footprints near a retention pond. The footprints were headed south, towards a culvert.

{¶8} At the culvert, officers found a Carhartt jacket and a set of car keys. The keys were for a Ford, not a Buick. Two males were found hiding in a storm drain near the culvert and were taken into custody. The men were identified as appellant and Matthew Lee

Roddy. Officer Holland identified appellant as the Buick's driver. He confirmed that Roddy, who had facial tattoos and longer hair, was not the driver.

{¶9} Appellant was subsequently indicted on one count of failure to comply with an order or signal of a police officer, in which it was alleged that he caused a substantial risk of serious physical harm to persons or property, in violation of R.C. 2921.331(B) and (C)(5)(a)(ii), a felony of the third degree, one count of receiving stolen property in violation of R.C. 2913.51(A), a felony of the fourth degree, and one count of obstructing official business in violation of R.C. 2921.31(A), a misdemeanor of the second degree. Following a jury trial, appellant was found guilty of all charges. He was sentenced to 30 months in prison for failing to comply with the order or signal of a police officer, 12 months in prison for receiving stolen property, and 30 days in jail for obstructing official business. The sentences were run concurrently, for an aggregate prison term of 30 months. Appellant's license was also suspended for five years.

{¶10} Appellant appealed, raising the following as his sole assignment of error:

{¶11} THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR GOES AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN APPELLANT'S CONVICTION FOR COUNT ONE OF FAILURE TO COMPLY WITH AN ORDER OR SIGNAL OF A POLICE OFFICER (SUBSTANTIAL RISK OF SERIOUS PHYSICAL HARM TO PERSONS OR PROPERTY), 2321.331(B), A FELONY OF THE THIRD DEGREE.

{¶12} Appellant contends his conviction for failure to comply with an order or signal of a police officer was not supported by sufficient evidence and was against the manifest weight of the evidence because the state failed to prove that he was the driver of the fleeing

Buick. He does not challenge the weight or sufficiency of the evidence with respect to his convictions for receiving stolen property or obstructing official business.

{¶13} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶14} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. In reviewing the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-

Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further, although the legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶15} The sole issue in this case was the identity of the driver of the fleeing Buick. "It is well-settled that in order to warrant a conviction, the evidence must establish beyond a reasonable doubt the identity of the accused as the person who committed the crime at issue." *State v. Jividen*, 12th Dist. Warren No. CA2020-10-067, 2021-Ohio-2720, ¶ 11, citing *State v. Harner*, 12th Dist. Brown No. CA2019-10-012, 2020-Ohio-3071, ¶ 13. "The identity of the accused as the perpetrator of the crime may be established by direct or circumstantial evidence." *Id.* Circumstantial and direct evidence have the same probative value. *State v. Lee*, 12th Dist. Fayette Nos. CA2020-09-014 and CA2020-09-015, 2021-Ohio-2544, ¶ 25.

{¶16} Upon reviewing the record, we find that appellant's conviction for failure to comply with the order or signal of a police officer is supported by sufficient evidence and is not against the manifest weight of the evidence. The state presented ample evidence to show that appellant was the driver of the Buick involved in the high-speed chase that occurred on November 29, 2021. Officer Baker and Officer Holland pursued the Buick from I-75 through Miamisburg with lights and sirens activated. Right as the chase was terminated for safety purposes, the driver of the Buick drove the vehicle straight at Officer Holland's

cruiser. Though Officer Holland split his attention between maneuvering his own vehicle to safety and observing the Buick, Officer Holland testified he was "able to look into the car [and] identify the driver and the passenger of the vehicle." Officer Holland was less than ten yards away from appellant when the Buick passed by his cruiser. He was able to describe the driver of the vehicle as a man with a clean, buzz-cut haircut and a scruffy three-day beard. Though he could not tell whether the man was white or black, Officer Holland could tell that the driver had "darker facial features, a darker complexion" and did not have facial tattoos. After appellant and Roddy were apprehended hiding in a storm drain, with personal belongings containing Roddy's first and middle names being collected from the nearby creek bed, Officer Holland was able to view both of the men. Officer Holland testified that "without a doubt," appellant was the driver of the vehicle. Roddy, who had facial tattoos and longer hair, was not the individual that Officer Holland observed behind the wheel of the Buick.

{¶17} Appellant challenges the reliability of Officer Holland's identification, noting the short time the officer had to observe the Buick's driver while simultaneously maneuvering his police cruiser out of harm's way and the officer's inability to initially determine the race of the driver. The jury, as the trier of fact, was in the best position to determine the "credibility of witnesses and weight to be given to the evidence as it relates to the perpetrator's identity." *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 41. *See also State v. Johnson*, 12th Dist. Warren Nos. CA2019-07-076 and CA2019-08-080, 2020-Ohio-3501, ¶ 24. The jury clearly believed Officer Holland's testimony that he had "no doubt" that appellant was the Buick's driver. The jury was in the best position to judge the credibility of the officer, and we will not disturb its credibility

determination. *Harner* at ¶ 18; *State v. Harding*, 12th Dist. Madison No. CA2016-11-029, 2017-Ohio-8930, ¶ 26.

{¶18} In light of Officer Holland's identification of appellant as the driver of the Buick and the testimony and evidence tracking appellant and his passenger's path from the Buick to the storm drain where they were apprehended, we find that the evidence presented at trial does not weigh heavily in favor of acquittal. The jury did not clearly lose its way and create a manifest miscarriage of justice in finding appellant guilty of failing to comply with an order or signal of a police officer. Appellant's conviction is therefore not against the manifest weight of the evidence and is supported by sufficient evidence. His sole assignment of error is overruled.

{¶19} Judgment affirmed.

M. POWELL, P.J., and PIPER, J., concur.