[Cite as *State v. Pack*, 2024-Ohio-190.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-10-063 |
| | : | O P I N I O N |
| - vs - | | 1/22/2024 |
| | : | |
| RICKY L. PACK, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 2022 TRD 3156(A), (B), (C)

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nick Horton, Assistant Prosecuting Attorney, for appellee.

W. Stephen Haynes, Clermont County Public Defender, and Robert F. Benintendi, Assistant Public Defender, for appellant.

**BYRNE, J.**

{¶ 1} Ricky Pack appeals from his convictions for traffic offenses in the Clermont County Municipal Court. For the reasons described below, we affirm.

**I. Factual and Procedural Background**

{¶ 2} In April 2022, an officer with the Milford, Ohio police department filed complaints alleging that Pack had committed three traffic offenses in Clermont County: (1)

driving under an OVI suspension; (2) failure to stop after an accident on public roads; and (3) willful or wanton disregard of safety on highways. These charges resulted from allegations that Pack was the driver of a vehicle that led police on a high-speed chase. The chase ended when the vehicle crashed in a cemetery and the driver fled on foot, successfully evading arrest for some time.

{¶ 3} In August 2022, authorities arrested Pack for these offenses. In September 2022, the matter proceeded to a bench trial. The state introduced the testimony of Mariemont, Ohio police officer Rachel Hays, who was the officer who pursued the vehicle allegedly driven by Pack.

{¶ 4} Officer Hays testified that she was on patrol shortly after 11:00 p.m. when she began pursuing a vehicle. The chase began in Mariemont and ended in Milford. The vehicle crashed after failing to negotiate a sharp left turn. The vehicle went over the roadway and crashed into a cemetery.

{¶ 5} Officer Hays stated that upon crashing into the cemetery, the person she would later determine to be Pack emerged from the driver's side door and fled the scene on foot. Officer Hays explained that she "just caught the back of him" before he "fled on foot in front of the vehicle." After the man left the vehicle, a female – later determined to be Megan Royce – also emerged from the driver's side door and fled the scene. Officer Hays stated that Royce used the driver's side door because the passenger side door was damaged in the crash.

{¶ 6} Officer Hays testified that a K9 officer apprehended Royce. Officer Hays spoke to Royce, but Royce never told her who was driving. Royce did not indicate that she was driving the vehicle.

{¶ 7} The state introduced dash-camera footage depicting the chase and the scene upon Officer Hays arriving at the crash site. The video shows, from a distance, two people

fleeing from the vehicle and then running further into the cemetery. The video also shows Officer Hays beginning to chase the individuals. It also includes some audio of Officer Hays' chase after the officer left the field of the camera's view.

{¶ 8} Officer Hays found a credit card with Pack's name on it in the vehicle. She also found a cell phone in the vehicle that had a photograph of Royce and Pack as the background image. She ran a name search through her computer and "pulled up the identification of who I thought it was and then confirmed his identification" with the photograph on the cell phone. Officer Hays identified Pack as the person who fled from the vehicle that night.

{¶ 9} Officer Hays stated that she believed that Pack was the driver of the vehicle, as opposed to its passenger, because he exited the vehicle first through the driver side door and Royce exited the vehicle second through the same door, indicating that Royce must have moved over from the passenger seat before exiting the vehicle. Officer Hays also noted that Pack was tall, approximately 6' 1", and Royce was very short, around 5' 1" or 5' 2". Officer Hays observed that the driver's seat was pushed "extremely" far back in the car, to the point where she did not believe that Royce would have been capable of operating the foot pedals given her height.

{¶ 10} Officer Hays also testified that the vehicle was not registered to either Pack or Royce, and that the vehicle had a fictitious plate.

{¶ 11} On cross-examination, Officer Hays conceded that she did not see Pack's face that evening. She agreed with defense counsel's assertion that what she observed was a 6' 1" male with brown hair leave the vehicle. She did not know how the credit card got in the vehicle or how long it was there.

{¶ 12} The court found Pack guilty as charged. Pack appealed, raising two assignments of error. We address Pack's assignments of error together.

## II. Law and Analysis

{¶ 13} Pack's first assignment of error states:

THE EVIDENCE, VIEWED IN A LIGHT MOST FAVORABLE TO THE STATE, WAS INSUFFICIENT TO SUSTAIN A CONVICTION FOR [THE CHARGED TRAFFIC OFFENSES].

{¶ 14} Pack's second assignment of error states:

THE TRIAL COURT ERRED IN ENTERING A VERDICT OF GUILTY BECAUSE SUCH VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 15} Pack argues that there was insufficient evidence introduced at trial to permit a reasonable factfinder to conclude that the state proved his identity. Pack points to the fact that Officer Hays admitted that she only saw a 6' 1" male with brown hair run from the vehicle. Pack further notes that the vehicle was not registered to him. Pack discounts the importance of the credit card because it was not in a wallet and suggests that the fact that it was "loose" suggested someone borrowed his credit card. Finally, he argues that the state failed to prove who owned the cell phone and that, if it belonged to Royce, "this fact could in no way act as circumstantial evidence that Mr. Pack was driving" that evening. For the same reasons, Pack argues that his conviction was against the manifest weight of the evidence.

## A. Standard of Review

{¶ 16} When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph

two of the syllabus.

{¶ 17} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

{¶ 18} In reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Zitney*, 12th Dist. Clinton No. CA2020-06-007, 2021-Ohio-466, ¶ 15. A determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency. *State v. Reeder*, 12th Dist. Clinton Nos. CA2020-09-012 and CA2020-09-013, 2021-Ohio-2988, ¶ 31.

**B. Analysis**

{¶ 19} The sole issue in this case is the identity of the individual who was driving the vehicle chased by Officer Hays. It is well established that to warrant a conviction, the evidence must establish beyond a reasonable doubt the identity of the accused as the person who committed the crime. *State v. Harner*, 12th Dist. Brown No. CA2019-10-012, 2020-Ohio-3071, ¶ 13. The identity of the accused as the perpetrator of the crime may be

established by direct or circumstantial evidence. *State v. Raleigh*, 12th Dist. Clermont Nos. CA2009-08-046 and CA2009-08-047, 2010-Ohio-2966, ¶ 45. Circumstantial evidence has no less probative value than direct evidence. *State v. Helvey*, 12th Dist. Butler No. CA2021-01-008, 2022-Ohio-98, ¶ 21.

{¶ 20} Upon a thorough review of the record, we find that the state presented sufficient evidence to convince the average mind of Pack's identity beyond a reasonable doubt. We also conclude that Pack's conviction was supported by the greater weight of the evidence, and this is not one of the exceptional cases where the evidence weighs heavily against the conviction.

{¶ 21} Officer Hays stated that she observed a tall male individual fleeing from the vehicle she was chasing. This individual emerged from the driver's side door of the vehicle. She did not see his face but she was able to see his back. She observed that he was a 6' 1" male with brown hair. Identifiers in the record reflect that Pack is 6' 2" and has brown hair. Officer Hays identified Pack at trial.

{¶ 22} Upon searching the vehicle, Officer Hays recovered Pack's credit card. She also recovered a cell phone in the vehicle that contained a photograph of Pack and Royce as the background image. Law enforcement identified Royce as the shorter of the two individuals who fled from the vehicle. Officer Hays was able to run Pack's name—which she obtained from the credit card—and match Pack's image to the male in the photograph on the cell phone.

{¶ 23} While the evidence to establish Pack's identity was circumstantial, it is not too far of a leap to conclude that Pack was the individual who fled from the vehicle. The credit card is circumstantial evidence that Pack was in the vehicle because it is reasonable to assume that Pack would be traveling with his credit card. It is less reasonable to presume, as suggested by Pack, that some random person was "borrowing" his credit card.

{¶ 24} The cell phone is circumstantial evidence of Pack's presence in the vehicle that evening for two reasons. First, the presence of Pack's photograph on the cell phone indicates that he may have been the owner of the cell phone and therefore circumstantially suggests his presence in the vehicle that evening because it is reasonable to assume that Pack would travel with his cell phone. This is a reasonable assumption based on common experiences. The choice of a photograph as a cell phone background indicates the importance of the photograph to the cell phone owner. One would not place images of strangers on a cell phone background. The logical implication of the photograph is that the cell phone likely belonged to either Pack or Royce.

{¶ 25} Second, the presence of both Pack and Royce in the photograph strongly suggests that Pack and Royce were in a relationship. Again, one would not choose an insignificant photograph as a cell phone background. This is also circumstantial evidence that Pack was in the vehicle because it is reasonable to assume that people in a relationship often travel together. The photograph, the credit card, and the fact that the man Officer Hays observed had features similar to Pack's features, when viewed collectively, and when coupled with Royce's undisputed presence that evening, support the conclusion that Pack was the male who fled the vehicle.

{¶ 26} We disagree with Pack's argument that if the cell phone belonged to Royce, "this fact could in no way act as circumstantial evidence that Mr. Pack was driving * * *." As we stated above, we agree that the cell phone could have belonged to either Pack or Royce. If it belonged to Pack, then that is circumstantial evidence that he was in the vehicle because it is reasonable to assume he would travel with his cell phone. But if it belonged to Royce, it remains circumstantially significant for the reasons stated, i.e., because it helps establish that Royce and Pack were in a relationship and traveling together. Considering the totality of circumstantial facts, a reasonable factfinder could conclude beyond a

reasonable doubt that the state proved Pack's identity.

{¶ 27} Pack does not directly challenge the finding that he was the driver of the vehicle. To the extent he challenges that issue, we note that the evidence was clear that Royce was much shorter than Pack and that she was the second person to emerge from the driver's side door. As the second individual to emerge from the driver's side door, it is logical to conclude that Royce would have been in the passenger seat and would have followed Pack out of the vehicle's driver's side door due to the passenger door's inoperability. Additionally, Officer Hays observed that the driver's seat was set so far back she did not believe that Royce could have physically operated the vehicle.

{¶ 28} In sum, Officer Hays observed a male fleeing from the vehicle whose hair, size, and stature matched Pack's hair, size, and stature. She then found two personal items which plainly linked Pack to the vehicle and suggested that Pack was in a relationship of some type with Royce. Royce was found to be the other individual who fled from the vehicle. The evidence of Pack's identity was circumstantial, but circumstantial evidence has no less probative value than direct evidence. *Helvey*, 2022-Ohio-98 at ¶ 21.

### III. Conclusion

{¶ 29} Pack's convictions were supported by sufficient evidence and the greater weight of the evidence. We overrule Pack's first and second assignments of error.

{¶ 30} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.